THOMAS MILNER HARRISON *v.* J. A. MAGOON, F. B. McSTOCKER, L. C. ABLES and DOROTHEA EMERSON nee LAMB.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 5, 1901.        DECIDED APRIL 25, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

G., H., the defendants and certain other persons entered into a written agreement to form a copartnership to engage in a certain business in Tasmania. In said instrument it was agreed, *inter alia,* "that if at or before the expiration of a period of six months" from a certain date, "the said G. or the said H. is not satisfied with the condition of the said partnership business in Tasmania," certain of the partners "will give the said G. or the said H. stock of the market value equal to the amount paid by him of the 2250£ mentioned in clause 2 hereof in some other district of the company's field of operation in exchange for the portion of the said 2250£ taken by him." The clause 2 referred to shows that G. and H. together paid 2250£ for a nine-twentieth interest in the partnership, and another clause that of this sum G. paid 250£ for a one-twentieth interest and H. 2000£ for a two-fifths interest. H. brought an action to recover damages for breach of the said agreement to deliver stock. Held, on demurrer:

Either G. or H. or both may, upon the happening of the contingency stated, recover damages, G. for the failure to deliver to him the stock named of the market value of 250£ and H. for the failure to deliver to him such stock of the market value of 2000£, that the said agreement gives neither to G. nor to H. the right to recover stock of the market value of 2250£ or damages for failure to deliver said last named amount of stock and that it is unnecessary for H. to allege in this case that G. has not sued for or

recovered any of said stock or damages for failure to deliver the same.

In the said agreement the said promisors and not the promisees took the risk as to whether or not at the time of the happening of the contingency stated the stock mentioned would be in existence, and it is therefore unnecessary for the plaintiff to allege that such stock is or was in existence.

The statement in the declaration that plaintiff "made demand upon said partners that under the terms of paragraph 4 of said agreement they should deliver to him stock," etc., is a sufficient allegation of a demand for such stock in accordance with the terms of said paragraph 4, to wit, in exchange for plaintiff's interest in "the partnership hereby formed," and of an offer to give such interest in exchange.

The said promise to deliver stock to the plaintiff was based upon a valuable consideration, to wit, the payment by the plaintiff of the sum of 2000£ and his agreement to proceed to Tasmania to conduct the business of the partnership.

Assuming that the language of the agreement is ambiguous as to what stock is meant and that this fact might prevent the maintenance of a bill for specific performance of the contract to deliver such stock, an action at law for recovery of damages may nevertheless be maintained because it appears from the face of the declaration that the defendants have failed and refused to deliver any stock and have thereby committed a breach of the agreement, giving the plaintiff the right to recover at least nominal damages.

While the present action is one between persons who are partners in a certain business, the plaintiff is not suing any partnership of which he is a member; the agreement sued on is an express personal contract between individuals who are partners, but not in their capacity of partners, is wholly distinct from partnership affairs and does not involve the consideration or require the examination of the partnership accounts; and under the circumstances an action at law may be maintained.

On the subject of jurisdiction, it is sufficient to allege in a declaration on a foreign judgment "that at the time of said action and the rendition of the judgment hereinafter mentioned, the said court was a court of record in said city, having jurisdiction over the parties plaintiff and defendant, and also of the subject matter in

and of the said action;" and this even though it appears by inference or otherwise from the face of the declaration that at the time of the institution of the action in the foreign court or of the rendition of judgment therein, the defendants were non-residents. It is not necessary to allege more specifically that direct personal service was made or that the defendants voluntarily submitted to the jurisdiction of such foreign court.

Where a foreign court upon a joint cause of action renders judgment against some and not all of the joint defendants, such error in the proceeding, assuming but not deciding that the judgment was erroneous, is at most a mere irregularity and not matter affecting the jurisdiction of the foreign court and therefore not open to review in an action on such foreign judgment.

An action on a judgment is, within the meaning of Section 1259 of the Civil Laws of 1897, an action arising out of an implied contract, and a count on such a judgment may, under said statute, properly be joined with a count on an express and entirely distinct contract between the same parties.

A plaintiff may properly join in the same action a count on a foreign judgment and a count on the original cause of action (between the same parties) on which the foreign judgment was based and rendered.

The agreement to deliver stock first hereinabove recited is, in view of the language of the instrument which is quoted in full in the opinion, held to be a joint and several contract. Under Section 1222 of the Civil Laws of 1897, it is necessary to join as defendants in the action all of the parties to the said joint and several contract.

In an action on a judgment, it is necessary to join as parties defendant all the living judgment debtors, except those who are out of the jurisdiction.

### OPINION OF THE COURT BY PERRY, J.

This is an action of assumpsit wherein the plaintiff declares on two counts. In the first count, he claims of the defendants the sum of $10,000., with legal interest from March 10, 1898, for damages resulting to him by reason of the breach of a certain agreement entered into at Auckland, New Zealand, on the 20th

day of September, 1898, by the defendants and certain other persons, of the one part, and one Alfred Edward Gilmore and the plaintiff of the other part. The agreement was in words and figures as follows:

"Memorandum of Agreement made this 20th day of September, 1897, between The African Pacific and Indian Hagey Company, an association of partnership formed in Honolulu, Republic of Hawaii, April 10th, 1897, the        said partnership being composed of the following members:—T. E. Cowart, J. H. Kirkpatrick and Geo. D. Moore, of the State of Texas, United States of America, A. E. Powter, of Montreal, Canada, J. A. Magoon, F. B. McStocker, L. C. Ables and Dorothea Lamb, of Honolulu, Republic of Hawaii, all parties of the first part, and Alfred Edward Gilmore and Thomas Milner Harrison, both of the City of Auckland in the Colony of New Zealand, parties of the second part.

"Whereas the said Company have the exclusive right and title to the Hagey formulas for Alcoholism and Narcotism in and for the.Colony of        Tasmania and whereas the said Company have by contract entered the        day of May, 1897, with James Wolfenden secured certain rights relative to the use of the Thompson formulas for said diseases and whereas the said parties hereto propose to enter into partnership for the purpose of using, administering and vending to others the right to use and administer the said remedies in the Colony of Tasmania and in no other place or places.

"Now These Presents Witnesseth

"For and in consideration of the covenants, agreements and payments hereinafter named the parties of the first part for themselves individually and the said Company collectively do hereby constitute and accept the said parties of the second part as partners as hereinafter stated.

"1.    That the Capital of the said partnership shall be (£5000) five thousand pounds, of which the said Company shall own (11-20) eleven-twentieths, in consideration of granting all their exclusive rights to use the said remedies in the said Colony to the said partnership hereby formed; and the said company will

supply the said partnership hereby formed with the said remedies at the cost price thereof, until such time as the formulas for the preparation of the same may be given the said partnership hereby formed; and the said Company will not use the said remedies in the said Colony during the existence of the said partnership hereby formed otherwise than as partners therein; and they hereby convey to the said partnership hereby formed all their rights, privileges and recourses against others than the said partnership using the said remedy in the said Colony.

"2.    That the said Gilmore and the said Harrison have paid the sum of (£2250) Two Thousand Two Hundred and Fifty Pounds to the said Company for the other (9-20) nine-twentieths interest in the said partnership hereby formed, the receipt whereof is hereby acknowledged.

"3.    That the said Gilmore and the said Harrison shall conduct the business of the said partnership in Tasmania each at a salary of (£40) Forty Pounds per month to be a first charge on the receipts of the business after the current expenses have been paid. The said Harrison to act as manager of the said partnership hereby formed and the said Gilmore to act as Secretary Treasurer thereof.

"4.    That if at or before the expiration of a period of six months from the date of the departure of the said Gilmore or the said Harrison from New Zealand to Tasmania the said Gilmore or the said Harrison is not satisfied with the condition of the said partnership business in Tasmania, the said Company will give the said Gilmore or the said Harrison stock of the market value equal to the amount paid by him of the (£2250) said Two Thousand Two Hundred and Fifty Pounds mentioned in Clause (2) two hereof in some other District of the Companies field of operation in exchange for the portion of the said (£2250) Two Thousand Two Hundred and Fifty Pounds taken by him, and the said Company reserve the right either at the suggestion of the partners in Tasmania or at their own suggestion to send one of their own number or some competent man to aid and assist the partners in Tasmania at the same salary and with the same powers as either the said Harrison or the said Gilmore.

"5.  That the respective interests of the said Harrison and the said Gilmore in the partnership business in Tasmania are as follows, the said Harrison to have a (2-5) two-fifths interest for which he has paid (£2000) Two Thousand Pounds as mentioned in Clause (2) two hereof and referred to in Clause (4) four hereof, and the said Gilmore a (1-20) one-twentieth interest in the said partnership for which he has paid (£250) two hundred and fifty pounds as referred to in Clauses (2) two and (4) four hereof.

"6.  That a fund necessary for the starting of the business in Tasmania shall be raised by the partnership hereby formed, and placed in the hands of the said Gilmore and the said Harrison.

"7.  That the said Company reserves the right to dispose of a (1-20) one-twentieth interest in the partnership hereby formed, for the sum of (£250) two hundred and fifty pounds provided the person taking the same is agreeable to the said Gilmore and the said Harrison.

"In Witness Whereof the said parties hereto have set their hands this 1st day of October, 1897.

Signed in the presence of

· (Signed)      W. C. Robinson.

N. L.

| (Sig.) | T. E. Cowart, |
| " | J. H. Kirkpatrick, |
| " | J. A. Magoon, |
| By his Attys. J. H. Kirkpatrick, T. E. Cowart, |
| " | Dorothea Lamb, |
| By her Atty. J. H. Kirkpatrick. T. E. Cowart, |
| " | A. E. Powter, |
| By his Atty. T. E. Cowart, |
| " | Lemuel C. Ables, |
| " | Frank B. McStocker, |
| Per his Atty. L. C. Ables, |
| " | J. Wolfenden, |
| " | T. M. Harrison, |
| " | A. E. Gilmore." |

The plaintiff alleges that in pursuance of said agreement, on or about January 17, 1898, he left New Zealand and went to the Colony of Tasmania for the purpose of managing and carrying on the business referred to in the agreement and that he did so manage and carry on the same at the city of Hobart in Tasmania from February 1, 1898, to March 1, 1898; that the business was not successful and that he became dissatisfied with its condition and on or about March 10, 1898, notified his partners to that effect; that on or about the last mentioned date, he made demand upon his partners to deliver to him under the terms of paragraph 4 of said agreement, stock of the market value of two thousand pounds in some district other than Tasmania of the field of operations of said partnership; that said demand has not been complied with either in whole or in part; that on or about March 1, 1898, he paid, transferred and delivered to the parties of the first part named in the agreement all funds, moneys and assets of said partnership in his possession, also an account of all disbursements and expenditures made by him for and on account of said partnership, and that said funds, moneys, assets and account were accepted and received by said partners as true and correct; and that at the present time no unsettled account or indebtedness exists between him and his said partners except as to this claim of two thousand pounds with interest and costs.

The second count is upon a judgment for $10,600. which, it is alleged, was recovered June 13, 1899, at the city of Auckland, N. Z., by the plaintiff against the defendants herein together with T. E. Cowart, J. H. Kirkpatrick and George D. Moore in the Supreme Court of New Zealand, Northern District. The other allegations are, that at the time of the said action and of the rendition of the said judgment the said Supreme Court of New Zealand was a court of record in Auckland, having jurisdiction over the parties plaintiff and defendant and also of the subject matter in and of the said action; and that no part of the amount of said judgment has ever been paid.

To this declaration the defendants demurred on the following grounds:

"1.   That there is a defect or non-joinder of parties defendant.

"2.   That several causes of action have been improperly united.

"3.   That the declaration does not set forth facts sufficient to constitute a cause of action.

"4.   That the Court has no jurisdiction of the subject matter set forth in the first count of said declaration, nor does said count allege jurisdictional facts.

"5.   That the Court has no jurisdiction of the subject matter set forth in the second count of said declaration nor does said count allege jurisdictional facts.

"6.   That the plaintiff has failed to allege the existence in some other District than Tasmania of stock of the market value of Two Thousand pounds (£2000).

"7.   That it appears by said complaint that said plaintiff and these defendants are co-partners in respect to the matters and things in said declaration alleged, and that no action at law will lie between said co-partners for such matters and things.

"8.   That the declaration is ambiguous, unintelligible and uncertain, in that it does not set forth the continuance nor the dissolution of the partnership relations created by the memorandum of agreement thereto attached."

The court below sustained the demurrer on several of the grounds named. The case now comes to this Court on exceptions which present the question of the correctness of said ruling and of the merits of the demurrer. Those objections will be considered first which go to the merits of the action itself.

3 and 6.   On behalf of the defendants it is contended that the plaintiff is not entitled to recover upon the present declaration inasmuch as he has not therein averred (a) that Gilmore has not recovered the 2250£ mentioned in paragraph 4 of the agreement or judgment therefor or that he has not instituted proceedings for such recovery, (b) that the stock in said paragraph referred to is or ever was in existence, (c) that any tender was made by him to the defendants of the stock held by him in the partnership at the time demand was made for the 2000£ of other

stock, and because (d) it appears that the promise by the Company in that paragraph mentioned was without consideration and that it is therefore void.

(a) The language of paragraph 4 is, in part, that "if * * * the said Gilmore *or* the said Harrison is not satisfied * * * the said Company will give the said Gilmore or the said Harrison stock," and from this it is argued that the remedy here provided for is in the alternative and cannot be taken advantage of by both men, in other words, that *either* Gilmore *or* Harrison may, if dissatisfied, receive the stock for the non-delivery of which the action is now brought, but that not *both* of them may have such stock because that would be compelling the Company to deliver the same stock twice. This argument, though perhaps not expressed in these precise terms, necessarily involved the taking of the position that, upon dissatisfaction, either Gilmore or Harrison may recover the whole amount of stock, to wit, stock of the market value of 2250£. We believe that the agreement is not capable of this construction. Its language in this respect is clear and unambiguous. The undertaking is, upon the happening of the contingency stated, to "give the said Gilmore or the said Harrison stock of the market value equal to the amount paid by him of the (2250£) said Two Thousand Two Hundred and Fifty Pounds mentioned in clause (2) two hereof * * * in exchange for the portion of the said (2250£) Two Thousand Two Hundred and Fifty Pounds taken by him." Clause 2 shows that Gilmore and Harrison together paid 2250£ for a nine-twentieths interest in the partnership by the said agreement formed, and Clause 5 further shows that of this sum Harrison paid 2000£ for a two-fifths interest and Gilmore 250£ for a one-twentieth interest. The meaning and intention is clear that *both* Gilmore and Harrison are to have a remedy if they so desire, Gilmore to recover stock of the kind specified of the market value of 250£ and Harrison stock of the said kind of the market value of 2000£. The remedy of each is independent of that of the other; the measure of recovery in each instance is expressly stated, and even if both become dissatisfied and conclude to exercise their rights,

there is no double recovery of the *same* stock and no double liability on the part of the Company.

(b)   The defendants contend that it was the intention of the parties that the stock referred to should be delivered to Gilmore or Harrison only in the event of its being in existence at the time of demand for it and that their, the defendants', undertaking must be understood to have been upon that condition,—in other words, that "the Company" cannot be held to have guaranteed the existence of such stock at such time. The agreement was to deliver stock of the *market* value of 2000£. Had the word "face" been used in place of the word "market," that fact might have lent some strength to defendants' argument. In that case the plaintiff clearly would be taking chances with reference, at least, to the actual value of the stock. We must assume, however, that the words "market value" were used advisedly and with knowledge of the fact that they have a well-known signification and that at times they import something very different in amount from "face value." This language of the contract, in our opinion, discloses an intention on the part of the parties thereto that the plaintiff should, in the event of dissatisfaction, taking no chances at all, not even with reference to value, be reimbursed the amount of his loss,—in other words, shows that the defendants, and not the plaintiff, assumed the risk as to the existence of the stock. The agreement under consideration, by reason of its language, is not one of the class to which that in *Bowler v. Ahlo*, 11 Haw. 357, belonged.

It is further urged (d) that the Company could not possibly have intended to guarantee the existence of stock of the market value of 2000£ or of any stock at all because there was no consideration for such promise and such an undertaking would therefore be unbusiness-like and improbable. We fail to perceive any force in this argument. So far as appears from the face of the declaration the "Company" contributed nothing to "the partnership hereby formed" other than the right to use in the Colony of Tasmania certain formulas for the cure of alcoholism and narcotism and its proportional share of such small sum as was necessary to defray the expenses of entering upon the proposed

business. The plaintiff, on the other hand, paid to "the Company" 2000£ in cash for his interest in "the partnership hereby formed" in addition to paying his share of the expenses just mentioned. In other words, Harrison paid the substantial sum stated in order to be permitted to join in the experiment about to be made of curing alcoholism and narcotism and in the profits, if any, derivable therefrom. That the result of the experiment and the success of the venture were regarded at that time by the parties themselves as highly problematical, is at once apparent from the terms of the agreement, and not only is it not to be wondered at but it is natural to expect that the plaintiff before consenting to put his money in a venture of this sort and to proceed to Tasmania to do the actual work of the partnership, should have obtained a stipulation securing to him the return of his money in case of failure and the placing of the parties in their original position. There is no unfairness to the Company in such an agreement if it was voluntarily entered into. The consideration for the promise was ample.

(c) It does not appear that the plaintiff held any certificate or other evidence of his share in "the partnership hereby formed" and the inference is that he did not. There was nothing tangible, then, which he could have tendered. It is averred in the declaration that the plaintiff became dissatisfied with the condition of the business, that he notified his partners to that effect and that he "made demand upon said partners that under the terms of paragraph 4 of said agreement, they should deliver to him stock of the market value of Two Thousand Pounds (2000£) in some District other than Tasmania of the field of operations of said partnership." This is a sufficient allegation that the stock demanded was demanded in accordance with the terms of paragraph 4, to wit, in exchange for his intangible interest in "the partnership hereby formed." It is in effect an averment of such a demand accompanied by an offer to give in exchange his intangible interest. Plaintiff did all that by the terms of the contract he was required to do in order to become entitled to the relief demanded.

It is also contended that the agreement, and therefore the

declaration, is ambiguous and uncertain inasmuch as it is impossible to ascertain therefrom what stock is meant in Clause 4. Assuming, but not deciding, that the language in this respect is ambiguous, that fact might prove a serious obstacle to the maintenance of a suit for specific performance praying for the delivery of the stock itself; but such is not the nature of this case. The defendants have failed and refused to deliver *any* stock, and the action is merely one for the damages resulting from such failure and refusal. Whatever stock was intended, plaintiff would be entitled to at least nominal damages, since the agreement was not, as already held, conditional upon the *existence* of the stock and since, therefore, there was a breach of the agreement.

The further objection is made that there is no allegation in the declaration that the attorneys-in-fact who signed the agreement for some of the defendants were duly authorized so to do. We think that the allegation that the defendants, naming them, entered into the agreement, is sufficient on demurrer.

4, 7 and 8. These grounds of demurrer are based on the fact that the plaintiff, Gilmore and the persons composing "the Company" became, by virtue of the agreement, partners in "the partnership hereby formed." The contention is that the present controversy is one between partners, relating to a partnership transaction, that there has been no final settlement or accounting between the partners, and that under the circumstances the plaintiff's remedy is in equity and not at law. The general rule undoubtedly is that "an action at law will not lie in favor of one or more partners or their representatives against one or more copartners or their representatives upon a demand growing out of a partnership transaction until there has been a settlement of accounts and a balance struck."—15 Encycl. Pl. & Pr. 1005. There are two reasons for this rule, one, that in an action against a partnership of which the plaintiff is a member, the plaintiff himself would also be a defendant inasmuch as he would recover, if at all, in part from himself or from a fund in which he had an interest, and that this would present a state of affairs as to parties not permitted at law; the other reason "is found in

the inherent nature of the partnership relation and consists simply in the fact that prior to an accounting and settlement of the partnership affairs no cause of action exists between the partners founded solely upon partnership dealings, except an equitable action for an accounting and settlement of the affairs of the partnership;" (15 Encycl. Pl. & Pr. 1008) in other words, prior to such settlement it cannot be said what, if anything, is due.

Neither of these reasons exist, and therefore the rule itself does not apply, in the case at bar. The plaintiff is not in any sense making himself a party defendant; he is not suing any partnership of which he is a member. The recovery which he seeks is solely from "the Company" or its members and not from "the partnership hereby formed." He has no interest in "the Company" as a member, or in its property (except the enforcement of the present cause of action), although its members are his partners in "the partnership hereby formed." If he recovers judgment against "the Company" or any or all of its members, no property of his or in which he has any interest will become liable for the satisfaction of that judgment.

The allegation concerning an accounting contained in the declaration is really unnecessary. The cause of action is distinct and does not in any way involve a consideration of the partnership accounts or dealings.

We believe the law to be that "where the cause of action is distinct from the partnership accounts, and does not involve their consideration, or require their examination, an action at law will lie thereon between the partners;" that "an action at law lies upon express individual and personal contracts between partners, and it is immaterial whether such contracts relate to the partnership affairs or are wholly distinct therefrom," and that "if partners, by an express agreement, separate a distinct matter from the partnership dealings, and one expressly agrees to pay the other a specific sum for that matter assumpsit will lie on that contract although the matter arose from their partnership dealings." (15 Encycl. Pl. & Pr., 1034, 1043, 1044 and 1048.) These partners, in order to successfully launch, "the partnership

hereby formed," entered into a preliminary contract whereby certain of them agreed to purchase the plaintiff's interest in the concern upon the happening of a certain contingency. The transaction was purely one between the individuals, not in their capacity of partners. Gilmore was not in any way concerned in the agreement as to the purchase of Harrison's interest, and Harrison likewise was in no way concerned in the agreement as to the purchase of Gilmore's interest. It is just as though one only of the partners had agreed to buy out Gilmore for a specific sum, and another to buy out Harrison for another specific sum.

"If by the articles a continuing partner is, on dissolution, to pay the retiring partner a specified sum, the latter may recover it at law, even though on adjustment of the accounts he would be debtor to the firm."—2 Bates on Partnership, §890. See also Ib., §§874, 889.

"So there may be special bargains between the partners, by which particular transactions are insulated and separated from the winding up; and a single partner be substituted in place of the firm. Such is the common case of a partner retiring and selling out his interest to the continuing partners, who assume the debts. The retiring partner can sue them at law for the purchase price of his interest, which they had agreed to give, or for the amount of any debt he has had to pay."—Ib. §891.

"The fact that the partnership affairs have never been adjusted even though an adjustment thereof would show a balance due the defendant from the plaintiff is no impediment to the maintenance of this action. The agreement is for the payment, in a certain contingency, of a specific sum of money by one party to the other in case of a dissolution of the partnership. The party who becomes liable under the contract to pay such money, is the debtor of the other party; and the latter may maintain an action against him therefor, without regard to the partnership relations formerly existing between them or the state of their partnership accounts."—*Read v. Nevitt*, 41 Wis. 352, 353. See also *Edens v. Williams*, 36 Ill. 252; *Wetherbee v. Potter*, 99 Mass. 363; *Edwards v. Remington*, 51 Wis. 343.

5.   The allegation of the declaration on this subject is, "that

at the time of said action and the rendition of the judgment therein, hereinafter mentioned, the said Court was a Court of Record in said City, having jurisdiction over the parties plaintiff and defendant, and also of the subject matter in and of the said action." This, in our opinion, is sufficient. It is an allegation of facts and not of law. To be sure, it is a brief, summarized statement of the facts, but the evidence showing those facts need not be set out in the declaration. The statutes governing the New Zealand court are merely a part of such evidence and will have to be proved at the trial in the same manner as any other fact. It appears from the face of the declaration that the present defendants were, at the time of the execution of the agreement, and are now residents of Honolulu, although, it also appears, defendant Ables was in Auckland at the date here first mentioned. It is argued that the inference is that all of the present defendants were residents of Honolulu and out of the jurisdiction of the New Zealand court at the time of the institution of the action and the rendition of the judgment, and that therefore the declaration expressly shows that, on the doctrine of *Pennoyer v. Neff,* 95 U. S. 719, the judgment is invalid for lack of jurisdiction by the Court in that action over the persons of those who are defendants in this action. It is unnecessary to decide at this time whether or not the New Zealand court could have acquired jurisdiction over these defendants, if absent, by constructive service by publication, for it may be that they were present, and that direct service was made or that they voluntarily submitted to the jurisdiction. Such inference, if any, of the nature stated, as may arise out of the other averments of the declaration, is overcome by the positive averment that the New Zealand court did have jurisdiction over the persons of the defendants. Nor do the authorities cited, *Galpin v. Page,* 18 Wall. 350, 367, 368, and *Wilbur v. Abbott,* 6 Fed. 814, as we understand them, go to the extent of holding to the contrary. The decision in *Galpin v. Page* was as to the validity and effect of certain decrees introduced in evidence and collaterally attacked in a subsequent proceeding, and was not on demurrer. The Court there said: "The presumptions indulged in support of the judgments

23

of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits, persons who can be reached by their process, and also over proceedings which are in accordance with the course of the common law.    *    *    *

"The tribunals of one State have no jurisdiction over the persons of other States unless found within their territorial limits, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy. *    *    *

"Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal judgment or decree is rendered, was, at the time of the alleged service, without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree." The presumptions referred to are those which have been held to arise from a record of a court of superior jurisdiction which is silent as to the matters concerning its jurisdiction in the particular case. These quotations may be more in point at the trial after the record of the New Zealand court is proven in evidence. The language used recognizes the possibility already herein pointed out of a court acquiring jurisdiction over the persons of non-residents. The plaintiff in the declaration in the case at bar is not relying on presumptions but on an express allegation.

The report of the case of *Wilbur v. Abbott, supra,* does not expressly state whether or not the declaration contained any allegation on the subject of the jurisdiction of the court which rendered the judgment declared on, but the strong inference is that there was no such allegation. The decision holds that, it appearing that the judgment debtors resided out of the State when the judgment was rendered, "no presumption can arise that they were duly served with notice of the suit in which the judgment was rendered or that they appeared and answered thereto."

The case is distinguishable from that at bar in the particular already pointed out, and the decision does not apply.

The citation from 2 Black on judgments, §875, makes clearer the distinction sought to be drawn between the case last referred to and that at bar. The plaintiff in *Wilbur v. Abbott* in framing his declaration, evidently relied on the rule stated by Black that, "in bringing suit on a judgment rendered by a court of record in another State, it is not necessary for the plaintiff to aver that the court had jurisdiction either of the person or subject matter, or to set out the facts conferring jurisdiction; for jurisdiction is presumed to have existed until the contrary is clearly shown by way of defense to the action. It is proper, however, and perhaps necessary to allege that the court rendering the judgment was one of general jurisdiction, or a court of record, or to describe it in such terms that this fact may appear as a necessary inference." The court practically took the view that such a presumption was insufficient to sustain the pleading where it affirmatively appeared on its face that the defendants were non-residents; and Black in the same section says: "if, however, it should appear from the record that the judgment was against a non-resident, it seems that an exception must be made to the general rule." The plaintiff before us has recognized this exception, or, perhaps, that equally favorable presumptions, in pleading, do not attend the judgment of a foreign court as attend that of a court of a sister State, and has accordingly made an express allegation to avoid the difficulty.

Two decisions which, though arising out of the interpretation of particular statutes, are valuable for the light which they throw on the question of the sufficiency of such an allegation as that contained in this plaintiff's declaration, are those in the cases of *Brownell v. The Town of Greenwich*, 114 N. Y. 518, 527, and *Fisher, Brown & Co. v. Fielding*, 67 Conn. 91, 102, 103. In the first of these, a case submitted under the Code, the agreed statement was that the county judge "duly adjudged, determined and ordered" to a certain effect in certain proceedings, and counsel contended, as in the case at bar, that the facts giving the jurisdiction must be alleged and proven. The Court said: "The

expression 'duly adjudged,' as used in the statement for the sub-
mission of this controversy, therefore, means adjudged according
to law, that is, according to the statute governing the subject,
and implies the existence of every fact essential to perfect regu-
larity of procedure, and to confer jurisdiction both of the sub-
ject-matter and of the parties affected by the judgment, includ-
ing the defendant. A judicial officer has jurisdiction, when he
has power to inquire into the facts, to apply the law and to pro-
nounce the judgment. Any step in the cause or proceeding be-
fore him is necessarily the exercise of jurisdiction, and that step
cannot be 'duly' taken unless jurisdiction exists. The final step,
in particular, the making of the judgment, cannot be 'duly'
taken unless all of the preliminary steps upon which it is based
have likewise been duly taken."

*Fisher, Brown & Co. v. Fielding, supra,* was an action
brought in Connecticut on a judgment obtained in England.
The plaintiff simply averred that the foreign court "duly
adjudged" that the defendant should pay to the plaintiffs, etc.
Defendant demurred for want of allegations that the court in
question had jurisdiction of the alleged action, or of the subject
matter, or of the parties; or that the defendant had notice of the
action, or was summoned to appear therein, or did in fact appear;
or that there was any hearing or trial. On appeal, the Supreme
Court of Connecticut said:

"The plaintiffs' complaint was drawn in the form authorized
by the Practice Book (No. 169, p. 107) in actions on a foreign
judgment. In actions on a domestic judgment, the authorized
forms (Practice Book, No. 166 and No. 167, pp. 106, 107) state
the fact, but not the manner of its recovery; but in declaring
on the judgment of a foreign court, the approved averment is
that such court, 'in an action therein pending between the plain-
tiffs and the defendant, duly adjudged that the defendant should
pay to the plaintiffs' the sum in qestion. No court can 'duly'
adjudge such a payment, except in an action conducted in due
course of law. Due course or process of law, with respect to such
a judicial proceeding, necessarily involves reasonable notice to
the defendant of the institution and nature of the action, given

(unless this be waived), if he be a non-resident, by personal service within the jurisdiction, and a fair opportunity to be heard before a tribunal of competent jurisdiction. So much is due to every person from whom another seeks to recover in a judicial controversy before a court of justice. *Pennoyer v. Neff*, 95 U. S. 714, 733.

"In the case of a domestic judgment, it is unnecessary to allege that these conditions have been fulfilled, because our law requires it, and it is to be presumed that the law has been obeyed. In respect to a foreign judgment, nothing can safely be taken for granted, and the Practice Book has therefore provided a different form of complaint.

"The Practice Act was designed to simplify our legal precedure, and to abbreviate pleadings by the omission of all unnecessary allegations. The demurrer to the complaint, on the ground that it did not allege that the High Court of Justice, Queen's Bench Division, Birmingham District Registry, had jurisdiction of the action, or of the parties, or of the subject-matter, nor that the defendant had notice of its pendency, or was summoned to appear, was therefore properly overruled. These facts were the indispensable conditions of a due adjudication by the foreign court; and whatever is necessarily implied is sufficiently pleaded. Nor was it cause of demurrer that the complaint did not state that any hearing or trial was had. The averment as to a due adjudication implied that there was a fair opportunity for hearing; and that the defendant could not complain that he did not avail himself of it."

See also *Wakelee v. Davis*, 50 Fed. 522, 523, (1892) where, expressly referring to *Galpin v. Page* (1873) and *Wilbur v. Abbott* (1880), and following *Brownell v. Greenwich*, it was said: "But in the eleventh and twenty-third paragraphs the plaintiff alleges that said judgment was duly given, made and entered by said district court, which, inasmuch as the defendant was shown to be a non-resident, was a proper and apparently necessary averment. * * * The averment that the judgment was duly entered was a sufficient statement of the facts, under the New York practice, to impliedly allege jurisdiction.

\*   \*   \*   The denial by the defendant of this allegation raises an issue of fact in regard to the existence of jurisdictional facts."

The plaintiff in the case at bar alleges with far more directness the matters which the court in the New York and Connecticut cases held to have been averred by necessary implication in the expression "duly adjudged."

One other argument advanced against the second count, is that the cause of action in the New Zealand court was joint and not joint and several, that only a joint judgment against all the defendants before that tribunal could have been correctly rendered, and that the judgment, inasmuch as it was not against *all* of the defendants jointly, is void upon its face. This, if erroneous at all, was a mere irregularity and not matter affecting the jurisdiction of the court, and therefore not now open to review.

2. It does not appear from the face of the declaration that the judgment of the New Zealand court was based upon the same original cause of action which is stated in the first count herein. Assuming that that judgment arose out of an entirely distinct transaction between the parties and that therefore the present declaration sets out beyond any question two causes of action, the second ground of demurrer cannot be sustained. Section 1259 of the Civil Laws of 1897 provides: "The plaintiff in a civil suit may unite several causes of action in the same complaint, when they all arise out of: 1. contracts, express or implied; or"   \*   \*   \*   (six other classes of actions are here named). "But the causes of action so united shall all belong to one only of these classes, and shall affect all the parties to the action, and shall be separately stated." In our opinion an action on a judgment is, within the meaning of this statute, an action *ex contractu*, i. e., on the promise or contract implied by law to pay the amount of the judgment. 1 Encycl. Pl. & Prac. 193; 1 Chitty Cont. 23; 1 Parsons Cont. 7; 2 Bl. Com. 465; Freeman on Judgments (3rd Edition), §217; 2 Black on Judgments, §848; *Johnson v. Butler*, 2 Ia. 535; *Moore v. Nowell*, 94 N. C. 270, 271; *Stuart v. Lander*, 16 Cal. 373, 375; *Childs v. The Harris Mf'g. Co.*, 68 Wis. 232, 233. The first count is on an express contract, hence there is no misjoinder.

Defendants contend, however, that it sufficiently appears by inference from the averments of the declaration, and the plaintiff during the argument in this Court stated the fact to be, that the New Zealand judgment was rendered on the same cause of action now declared on in the first count. Even upon these facts the two counts have not been improperly joined. The plaintiff has simply stated his case in two different forms, and for the same reasons, no doubt, which ordinarily lead plaintiffs to allege two or more different counts describing the cause of action, e. g., because of uncertainty as to whether or not one or the other of the counts is capable of proof. He can, of course, and expects to recover on one only. The tendency of courts at present is to regard the judgments of foreign courts of record as being just as conclusive between the parties as those of domestic courts of record, and there seems to be, in this view, no good reason for holding that the original cause is not merged in a foreign judgment while holding that there is such merger in the case of a domestic judgment. In neither instance, it scarcely need be noted, would there be any merger if the judgment was for any reason void, as, for example, for lack of jurisdiction in the court rendering the same, for such an alleged judgment would in fact not be a judgment at all. While, therefore, it may appear to be inconsistent for the plaintiff to aver both the agreement and the judgment, that consideration alone will not prevent the joinder of the counts. At common law inconsistent counts could be joined, and it is only by statute in some states that the procedure is prohibited. It is not uncommon to find in the same declaration two or more counts which are, strictly speaking, inconsistent and which cannot all be true at the same time; but the practice is well established and is, moreover, founded on good reasons. In the case at bar, if plaintiff fails to prove the jurisdiction of the New Zealand court, the position will be that the original cause of action will stand intact for lack of a valid judgment to absorb it; on the other hand, if he does prove the former judgment to be valid and binding against these defendants, he will recover on that and the original cause will be

deemed merged.  The apparent inconsistency will have disappeared.

It would serve no good purpose to compel the plaintiff to bring an action first on the judgment and then, if that fails of proof, to bring a new action on the agreement.  It is no hardship to the defendants to have both phases of the controversy disposed of in one action and it will further the ends of justice to permit this course to be followed.

See 5 Encycl. Pl. & Pr. 319, 321; *Barton v. Gray,* 48 Mich. 166, 167; *Walsh v. Kattenburgh,* 8 Minn. 101, 102; *Snyder v. Snyder,* 25 Ind. 401, 402.

1.  Non-joinder of parties defendant.  Four or five persons other than those named as defendants in this action, were members of "the Company" and parties of the first part to the agreement sued on in the first count.  The judgment declared on in the second count was rendered against three persons other than the present defendants.  Is there a defect of parties defendant?

The agreement sued on (quoting from it) "witnesseth: for and in consideration of the covenants, agreements and payments hereinafter named the parties of the first part for themselves individually and the said Company collectively do hereby constitute and accept the said parties of the second part as partners as hereinafter stated;" and then goes on to specify the details of the contract.  As we construe this clause, it is in effect as though the language used had been, that for the consideration stated "the parties of the first part do hereby, jointly and severally, make, with the parties of the second part, the following agreement of partnership."  The contract made in the opening clause by the parties of the first part is joint and several, and the contract there made is that the details of which are specified in the succeeding clauses.  If paragraph 4 stood entirely by itself, it would probably be construed to mean that the members of "the Company" jointly were liable for the promise there set forth to give Harrison certain stock upon the happening of a certain contingency.  The paragraph, however, cannot, we think, be read by itself; it must be read in connection with the opening sentence above quoted, and if so understood the result is the finding that the

promise in question was a joint and several obligation on the part of the members of the company. This is the construction strongly contended for by the plaintiff himself.

Turning to our statutes, Section 1222 of the Civil Laws of 1897 provides: "It shall be necessary to join as defendants in a civil action *all the* joint and several, or joint makers of promissory notes, or drawers of drafts, bills of exchange or orders, or *joint and several* obligors, lessees, or *parties of the first* or second *part to* covenants, *agreements* and contracts, in suing for nonpayment, non-acceptance, or non-fulfillment thereof, but it shall in no case be necessary to serve all the joint parties sued with process. Service of process upon one of several defendants at law, shall be legal service upon all for the purpose of appearance in court, and judgment may be entered against all such codefendants thereon; provided, however, that no execution shall issue against the sole property of any joint defendant on whom process was not duly served as aforesaid." Clearly the express language of this statute renders it necessary for the plaintiff to join as defendants all of the parties of the first part to the agreement sued on in the first count. It is, however, contended that the statute must be read as subject to an implied exception in the case of parties out of the jurisdiction of the court, on the ground that the statute is only declaratory of the common law rule on the subject and that at common law the exception named existed. If the exception referred to existed at common law,— it is unnecessary to say on this point whether it did or not— and if the statutory provision is to be construed as subject to the same exception, it can only be on the theory that the Legislature therein intended merely to declare the common law on the subject without modification. That this was not the intention of the Legislature, however, is clear from the fact that under the terms of the statute a plaintiff may recover a judgment against all those jointly liable on a contract without having service made upon all of said partners who are resident within the jurisdiction. The latter certainly was not possible at common law. We know of no sufficient reason for declaring the statute subject to the exception contended for.

. .Judgment debtors are not within any of the classes named in section 1222. They are not "parties of the first or second part to * * * agreements or contracts," that language referring, we think, solely to those who have voluntarily entered into such agreements and not to those upon whom, though unwilling, the law casts an obligation to pay the amount of a judgment duly rendered against them. The requirements of that section, then, as to the joinder of all the parties, do not affect this branch of the case. It is the common law rule that applies. At common law, in an action on a judgment, it was necessary to join as parties all the living judgment debtors excepting only those out of the jurisdiction. *U. S. v. Cushman*, 2 Sumner 313, 314; *Gilman v. Rives*, 10 Peters 298, 299, 300; 11 Encycl. Pl. & Pr. 1119, 1120. Any expression to the contrary in *Bowler v. McIntyre*, 9 Haw. 306, was *obiter dictum*. The common law rule, subject to the exception stated, governs in this case. The plaintiff must make all the judgment debtors parties defendant or show an excuse for not doing so.

The New Zealand judgment having been recovered against seven only of the parties of the first part to the agreement, the foregoing decision will, in view of the provision of section 1259 that "the causes of action so united shall * * * affect all the parties to the action" render it impossible, we think, for the plaintiff to join the two counts in one action.

In our opinion, the demurrer was properly sustained upon the first ground, but not upon the other grounds. Accordingly the exceptions are overruled and the case is remanded to the Circuit Court of the First Judicial Circuit for such further proceedings as may be proper not inconsistent with the foregoing views.

*Robertson & Wilder* for the plaintiff, who also appeared in person.

*Magoon & Thompson, Kinney, Ballou & McClanahan* and *H. A. Bigelow* for the defendants.