·THOMAS MILNER HARRISON *v.* J. A. MAGOON, F. B.
    McSTOCKER, L. C. ABLES, DOROTHEA EMER-
    SON (NEE LAMB), T. E. COWART, J. H. KIRK-
    PATRICK, A. E. POWTER, J. WOLFENDEN AND
    GEORGE D. MOORE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED DECEMBER 6, 1904.     DECIDED DECEMBER 19, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

PRACTICE—*specifying errors relied on as ground of motion for a new
    trial.*

> A motion for a new trial need not unless required by the court
> specify the errors alleged to have been made during the trial and
> relied upon as a ground for a new trial, but unless specified, so
> that it may appear that the court ruled upon them expressly, they
> are improperly presented in a bill of exceptions not filed within the
> requisite time after the entry of the judgment.

NONSUIT—*misjoinder of parties defendant.*

> A nonsuit is properly ordered upon failure of the plaintiff in an
> action against joint contractors to prove that any of the defendants ·
> executed or ratified the agreement declared on.

EVIDENCE—*insufficient to show ratification of agreement.*

> Four partners of a Hagey Cure Co. signed an agreement in New
> Zealand whereby the company took in the plaintiff and another as
> new partners, agreeing to give them £2,250 if, after a certain trial
> they were not satisfied with the conditions of the business. The
> three partners resident in Honolulu did not sign or authorize the
> signing of the agreement. Letters were received in Honolulu from
> one of the partners in New Zealand mentioning that they had "sold
> one-half interest in Tasmania for 8,000 sheep and £500" and that
> "the sale of Tasmania was for nine-twentieths of the territory,"

and that one of the partners (not having signed the agreement), was coming to Honolulu and would "put things to you as they are." About the same time the partners here received an 18 per cent. dividend on their stock, a small portion of which appeared to have been derived from the Tasmania sale, as shown by the trial balance received at the same time. Held: That this was not evidence on which the partners in Honolulu could be held to have ratified the agreement.

AGREEMENT—*construction of—several liability.*

An agreement purporting to be made between the H. Co., composed of C., K., M., P., M., McS., A. and L. of the first part and G. and H. of the second part, whereby "the parties of the first part for themselves individually and the said company collectively do hereby constitute and accept the said parties of the second part as partners as hereinafter stated" is an incomplete agreement for the purpose of forming the proposed partnership unless all the parties sign; there being an implied term in the agreement that all should sign in order that the signers incur several liability. There being no partnership formed in this case in consequence of the failure of four of the parties to sign the agreement, no partnership rights or duties were created by the incomplete agreement.

### OPINION OF THE COURT BY HARTWELL, J.

This was an action of assumpsit for breach of agreement declared on in a former action brought by the plaintiff against Magoon, McStocker, Ables and Emerson, in which the declaration was held bad for non-joinder of the other parties to the agreement, which appears in the report of the case. 13 Haw. 339. The plaintiff then joined the other parties and obtained a verdict which was set aside on exceptions on the ground that the court erroneously instructed the jury that the agreement was within the scope of the business of the articles of association of the A. P. & I. H. Co. The articles appear in the report of the case. 14 *Ib.* 420. At the next trial the plaintiff was nonsuited because in addition to several other reasons which in the view we take of the case are immaterial, the evidence did not show that the defendants Magoon, McStocker or Emerson had authorized or ratified the agreement. The nonsuit was ordered November 9, 1903, judgment thereon was entered November

12. Defendants moved for a new trial November 14 for errors at the trial as well as in granting the nonsuit. January 15, 1904, the motion was dismissed and time for filing the bill was extended. But, unless the filing of the motion suspended the entry of the judgment, the exceptions taken during the trial were not presented within the time required by statute. A motion of the defendants to dismiss the bill on the ground that the exceptions taken at the trial were improperly incorporated in the bill was denied on the ground that the exception to the nonsuit required consideration. 16 *Ib.* 170. We are of the opinion that the only exception in the bill which was presented within the time required by law is that which was taken to the dismissal of the motion for a new trial. The remaining exceptions, which were taken to rulings during the trial, were not "incorporated in the bill of exceptions and presented to the judge" "within twenty days after final judgment or such further time as may be allowed by the judge," as required by the statute (Laws of 1903, Act 32, Sec. 18). The motion for a new trial, although properly made, as held in the previous decision (*Ib.* 176) did not suspend the judgment or operate as an extension of time within which to incorporate such exceptions in a bill or present the same to a judge. The motion for a new trial was based specifically upon an alleged error in granting the nonsuit and of course the correctness of the ruling on the motion for a new trial may be considered by this court in so far as the granting of the nonsuit is concerned. The motion for a new trial was based also generally upon alleged errors occurring during the trial. Such a motion may properly be based on the general averment of errors committed during the trial provided a specification of the errors is not required by the trial judge or ordered by him at the request of the opposite party. The rulings are usually fresh in mind and there would be no occasion to delay argument until preparation of the transcript. But it does not follow that an exception to a denial of the motion for a new trial would bring before the appellate court all errors thus generally relied on in the trial court. We

cannot say that the circuit court in denying the motion ruled upon any question of law concerning its rulings during the trial, or that any question of law relating thereto arose at the hearing on the motion. The plaintiff may have relied on the ground named in his motion that the nonsuit ought not to have been granted on the evidence. At any rate he did not obtain specific rulings on the correctness of any of the trial rulings and therefore there is no question before us concerning them. The only exceptions which we can consider are those which are taken to rulings made by the circuit court "whenever any question of law shall arise in any trial or other proceeding." Sec. 1436, C. L. The only question which we can consider is whether the nonsuit was right. If, on the evidence, a finding that the agreement was ratified by Magoon, McStocker and Emerson would not have been justified, then as far as they are concerned the nonsuit was right. This court has held that the powers of attorney under which the names of Magoon, Emerson and McStocker were signed to the agreement did not authorize the signing. 14 Haw. 424. The evidence at the former trial which the plaintiff offered to show as ratification of the agreement was certain letters which were ruled out, and upon the competency of which for the purpose for which they were offered the court declined to pass in ruling upon the exceptions to the verdict. *Ib.* 425. The plaintiff claims that the agreement was ratified by the partners in Honolulu because, after learning from Australia that the partners there had "sold one-half interest in Tasmania for 8,000 sheep and £500" and that "the sale of Tasmania was for nine-twentieths of the territory," and that Moore, one of the partners, was coming to Honolulu on his way to Texas and "will put things to you as they are," they had failed to inquire of Moore concerning the exact terms of that agreement; and the plaintiff especially contends that when the partners here received about October 30, 1897, the 18 per cent. dividend, a portion of which was derived from the Tasmania sale, as shown by the trial balance received by them at the same time, their keeping that portion of the dividend and

failing to make inquiry as to the terms of the agreement amounted to deliberate and intentional ignoring of the terms, which would be equivalent to ratifying them. If it be true, as the plaintiff claims, that the partners resident in Honolulu had sufficient information from the letters, trial balance and accounts transmitted with the 18 per cent. dividend to apprise them that a new partnership had been formed according to the methods adopted when they themselves entered the business and when Wolfenden was admitted in Australia, 'and that a portion at least of the dividend was derived from the sale of the Tasmania territory, which sale according to the methods of the concern involved the taking in of a new partner, and also assuming that they regarded the Tasmania sale and the taking in of a new partner as unauthorized by them, it does not follow that they could have inferred from any of these things that any personal liability was incurred by the latest agreement concerning Tasmania and taking the plaintiff Harrison into the partnership. Nothing which had been done before, whether with or without their authority, could have led the Honolulu partners to imagine that an agreement had been made in Australia purporting to bind them jointly and severally to pay the new partner Harrison 2,250 £ if he should not be satisfied with the Tasmania business. It is not a case in which parties are chargeable with knowledge of all the facts because they knew or had reason to suspect the existence of some of them. The circumstances did not impose upon the Honolulu partners a duty to follow up a line of inquiry in order to ascertain the extent of the new liability attempted to be placed upon them. In *Parker v. Cartwright*, 7 Haw. 605, the opinion of Dole, J., refers to the law concerning "ignorance of facts of which the parties might have informed themselves," of the effect of "ignorance due to deliberate negligence," and to circumstances which place parties "upon their inquiry," and require that they should "have sought for information from available sources." Many decisions on this subject are cited in the plaintiff's brief, but they do not apply to the facts of this case. There was no evidence on which the jury

could properly have found a ratification of this agreement. As to accepting the dividend: As the court held in the former case, "If the acceptance be in ignorance or under misapprehension of any of the essential circumstances relating to the transaction, this will absolve the principal from all liability by reason of any supposed assent to the previously unauthorized act of the agent." *Ib.* We therefore sustain the nonsuit as to the defendants Magoon, McStocker and Emerson and there is no occasion, as far as these defendants are concerned, to discuss the correctness of any of the other rulings, since unless the agreement was either made or ratified by them they cannot be held under it. But the plaintiff claims that the court ought to have nonsuited the plaintiff as far only as these defendants are concerned and permitted him to take judgment against the others who did execute the agreement. The statute, he says, required him to implead all the obligors and therefore he ought not to be deprived of his remedy against the other defendants. The statute does not require persons to be impleaded who are not in fact obligors. A declaration would be good if framed to meet the case of an agreement entered into by only a portion of the names appearing in it and not joining the names of others signed by attorney provided the plaintiff is willing to admit and avers in his declaration that the other names were signed without authority. By declaring against all, however, he took the chances of being able to show that they had all executed the agreement, and was.liable to "be nonsuited at the trial if he fail in proving a joint contract," (1 Ch. on Pl., 51), unless this was an agreement binding upon the defendants severally as well as jointly.

In considering the demurrer in the first action the court construed the agreement that "the parties of the first part for themselves individually and the said company collectively do hereby constitute and accept the said parties of the second part as partners as hereinafter stated" as being in effect that "the parties of the first part do hereby jointly and severally make with the parties of the second part the following agreement of

partnership." 13 Haw. 360. It is contended on behalf of the
defendant Ables that this was *obiter dictum* and the court is not
precluded from now considering whether a several liability was
created by the agreement. In passing upon the demurrer the
court decided upon the effect of not joining all of the contract-
ors, but unless the declaration alleged a joint liability it would
have been unnecessary to join them if there was a several lia-
bility. The declaration appears to have been framed upon the
theory of joint liability of the defendants Magoon, McStocker,
Ables and Emerson. If they were jointly liable the other par-
ties to the agreement were so also, and perhaps it was unneces-
sary to pass upon the question of several liability. We consider
the question open for re-consideration. The agreement purports
to be "made this 20th day of September, 1897, between The
African Pacific and Indian Hagey Company, an association of
partnership formed in Honolulu, Republic of Hawaii, April
10th, 1897, the said partnership being composed of the follow-
ing members: T. E. Cowart, J. H. Kirkpatrick and Geo. D.
Moore, of the state of Texas, United States of America, A. E.
Powter, of Montreal, Canada, J. A. Magoon, F. B. McStocker,
L. C. Ables and Dorothea Lamb, of Honolulu, Republic of
Hawaii, all parties of the first part, and Alfred Edward Gil-
more and Thomas Milner Harrison, both of the city of Auck-
land in the colony of New Zealand, parties of the second part."
It is not clear in what sense the words "individually" and
"collectively" are used. To hold that the members of the orig-
inal partnership, in using the word "individually," intended
that they should be severally bound if all were not would be
going further than we think is authorized by the agreement. In
denying the plaintiff's motion for a rehearing of the decision
sustaining the demurrer the court said: "Whether or not, if it
shall appear hereafter that some of the persons named as defend-
ants neither executed nor subsequently ratified the execution of
the agreement, the others can still be held jointly liable, and
* * * are questions which have not yet arisen and upon which
no opinion is expressed." 14 *Ib.* 532. The court evidently had

in mind the question whether the agreement would be complete unless all signed or ratified. Courts sometimse classify agreements between several persons as "incomplete" if not signed by all who are named in them. This is on the theory of an implied term that all are severally bound in case only of all signing. In looking at the present agreement we reach the same conclusion by applying the theory of an implied term and by looking at the words used and the intended object. It is essential to a partnership agreement that each person mentioned as a partner severally agrees upon being so; and each of such persons can if he likes agree that the proposed partnership shall do certain things, or that the old firm of which he is a member shall enter into the new partnership and then do certain things. We do not see any such undertaking in the language used in this agreement. "In order to constitute a separate liability only, in those cases where several persons contract together for the performance of a particular act, the intention must be made plainly apparent by express words. This intention is to be gathered from a careful consideration of the whole tenor and general intent of the contract, and not from any particular words of severalty contained in it." 2 Chit. Cont., 11 Am. Ed., 1354. An agreement purporting to be made between several parties that they jointly and severally agree upon being partners with each other is not binding upon any one of them unless all execute or subsequently ratify the agreement. The thing to be agreed upon was that all the parties named and not certain of them should form a partnership. If no partnership was formed then there were no partnership rights or duties created by the incomplete agreement. The agreement which purported to be made between the Hagey Co., composed of Cowart, Kirkpatrick, Moore, Powter, Magoon, McStocker, Ables and Lamb of the first part and Gilmore and Harrison of the second part, was that the Hagey Co. collectively and its members individually "do hereby constitute and accept the said parties of the second part as partners as hereinafter stated." The partners who signed did not severally agree that they severally would form

a partnership with Gilmore and Harrison but that all of the partners did so. The agreement was ineffective for the purpose of forming a new partnership in consequence of the failure of certain of the Hagey Co. partners to execute it, and therefore Gilmore and Harrison were not constituted or accepted as partners and acquired no partnership rights. The views above expressed render discussion of the other exceptions unnecessary.

The exceptions are overruled.

*Robertson & Wilder* for plaintiff, who also appeared in person.

*J. A. Magoon* and *J. Lightfoot, Kinney, McClanahan & Cooper* and *S. H. Derby* for defendants.