HUNG CHIN CHING *v.* FOOK HING TONG, CHONG HING TENN AND KUI HING TENN.

No. 2729.

ARGUED JULY 10, 1950.            DECIDED AUGUST 18, 1950.

KEMP, C. J., TOWSE, J., AND CIRCUIT JUDGE MATTHEWMAN IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY TOWSE, J.

This is an appeal from a decree dismissing a bill to declare a trust and lien, for an accounting, for receivership and for a money judgment. The original bill is supplemented by three amended bills, which, together with the original bill, were the subjects of demurrer, each respective demurrer being overruled.

The material allegations of the bill as amended, upon which the petitioner seeks relief and which are necessary to the disposition of this appeal, aver that on or about September 13, 1941, the petitioner and the respondents Fook Hing Tong and Chong Hing Tenn conferred informally with reference to an association and combination of their resources for the purpose of thereafter engaging in the restaurant and liquor dispensing business in Honolulu; that on the same day, the petitioner and respondent Fook Hing Tong approached one Tam H. Lum, proprietor of the Green Mill, a restaurant and liquor dispensing establishment upon the subject of purchasing the said business. Lum expressed a willingness to dispose of the business for the sum of $30,000, conditioned upon his wife's approval; that during the evening of the same day, the petitioner and the respondents agreed to purchase the business for a maximum purchase price of $30,000 and to conduct the same as a joint adventure, each further agree-

ing and mutually promising to contribute toward the purchase price their respective contributive shares in the following proportions: Petitioner, $3,000, or one-tenth of the purchase price; the respondents, the remainder of the purchase price in amounts and share interests to be agreed upon among themselves. The allocation of shares upon consummation of the purchase was understood and agreed by and between all party purchasers, to be that the petitioner was to contribute and receive a one-tenth interest, or share in the business, and the respondents the remaining nine-tenths interest or nine shares. It was simultaneously agreed between all party purchasers that the respondent Chong Hing Tenn was to assume and exercise exclusive control of the finances of the business; that petitioner was to assume and exercise exclusive control of the sale and personnel of the business, and that each was to receive a salary of $250 per month therefor in addition to his respective interest in the enterprise. The remaining respondents were excluded from personal participation in the management or conduct of the business. On the following day Lum and his wife orally agreed with the purchasers to sell the business including the trade name and good will thereof, and to assign the lease of the business premises to them. A purchase price of $25,000 was agreed upon. In addition to the foregoing oral agreement, the sellers voluntarily agreed and consented to a trial operation of the business by the purchasers until October 1, 1941, upon which date the purchase price was to be payable if the purchasers were satisfied with the experiment. The *ad interim* proceeds of the business during the trial period were to become realizations of the purchasers in the event the sale was consummated. Pursuant to the agreement between the parties to assume active operating control of the business on behalf of all of the

purchasers under the trial operation arrangement with the sellers between the period September 16, 1941, the date of commencement of the trial operation period, and October 1, 1941, the termination thereof, the business prospered and the purchasers elected to exercise their right of purchase. On or about October 1, 1941, without the knowledge of or notice to the petitioner and pursuant to and in execution of the oral contract to purchase, the respondents procured transfers of the business and the lease of the business premises into their names with their own funds to the exclusion of the petitioner, who was at all times ready, willing and able to contribute his agreed share of the purchase price, and who expected and was waiting for notification as to when his contribution should be made since the respondents were to attend to the formal consummation of the purchase. Since all dealings between the party purchasers prior thereto had been informal and characterized by mutual confidence, the petitioner as a result was neither suspicious, nor did he exercise vigilance in respect of the formal consummation. On or about October 6, 1941, petitioner complained to respondent Fook Hing Tong that Chong Hing Tenn who, together with the petitioner, had been actively operating the business, was interfering with his exclusive operational duties as agreed upon. The respondent Fook Hing Tong thereupon re-assured the petitioner of his interest in the business to the extent of $3,000 and remonstrated with the respondent Chong Hing Tenn regarding petitioner's exclusive managerial duties and of his interest in the joint adventure. On or about October 11, 1941, the petitioner was informed that articles of copartnership between the respondents were about to be prepared to the exclusion of the petitioner. The petitioner conferred with the respondent Fook Hing Tong who again assured petitioner that the oral agree-

ment as agreed upon between the party purchasers would be respected. On or about October 20, 1941, the respondents procured a transfer of the retail liquor license of the said business to themselves without notification to the petitioner and omitting him as a licensee. On or about October 30, 1941, the respondents executed articles of copartnership excluding the petitioner. The respondents have operated the said business from that date to the filing of the bill herein to the exclusion of the petitioner, thereby appropriating to their own use the business, trade name, good will, and assigned lease, and failing to account to him for his interest therein or profits due him, though the events and acts of the parties heretofore set forth constituted the parties, as alleged in the bill, "joint adventurers of partners."

The bill as amended prays for an accounting between petitioner and the respondents; that the amount of respondents' obligation to the petitioner be determined, and that petitioner have judgment against the respondents jointly and severally for the amount thereof; that respondents, by way of answer under oath, disclose their respective contributions to the purchase price of the business and the leasehold and their respective interests in the said business, together with the proportionate division of profits derived therefrom as among themselves; that respondents, by way of answer under oath, disclose the gross and net incomes from the business from September 16, 1941, to the date of filing of the bill, together with the application of the net income during that period as among themselves; that a lien be declared securing respondents' obligations to the petitioner upon the leasehold and upon the net profits of the business during the aforementioned period; that the respondents be adjudged as trustees for and on behalf of petitioner to the extent of his interest

as determined, together with the lease upon the business premises, the good will, trade name, and net profits accruing from the business since September 16, 1941, to the date of filing of the bill for the use and benefit of petitioner, and that a receiver be appointed for the business and the property constituting the same.

On June 16, 1948, four years subsequent to the filing of the original bill, by way of answer to the bill as amended, the respondents denied generally the material allegations thereof. They further specifically denied and alleged that they at no time consummated any agreement for a copartnership between the petitioner and themselves; that no tender of any kind or amount was ever made by the petitioner for the purchase of any share of the business, and that the respondents had at all times acted in good faith in respect of the petitioner.

From the evidence adduced below the following facts, pertinent to this appeal, were found by the trial judge:

The petitioner was a sergeant of police in the Honolulu Police Department during the entire period covered in the proceedings; that the respondents are brothers and the petitioner was very friendly with the respondent Fook Hing Tong for a period of two years prior to the consummation of the purchase of the business; that during the latter part of 1940 and the year 1941, one of the respondent-brothers, Chong Hing Tenn, was interested in engaging in the liquor business and solicited the assistance of his brother Fook Ting Tong to aid him in financing the purchase thereof; that commencing with the summer of 1941 until the consummation of the purchase of the Green Mill by the respondents, the respondent Fook Hing Tong together with the petitioner, visited various liquor establishments in an endeavor to locate one for sale. On or about September 16, 1941, they learned that the Green Mill was

for sale. A conference was had at the home of the respondents' father attended by the respondents, their father and the petitioner. The purchase of the Green Mill was discussed. It was orally agreed by and between the respondents and the petitioner that the petitioner's contributive share would be $3,000. The remainder of the purchase price was to be contributed by the respondent-brothers. Upon being advised that the petitioner was acquainted with the owner of the Green Mill, they proceeded to his home. After a discussion, a sales price of $25,000, in addition to the inventory, was agreed upon, the respondents and the petitioner orally agreeing to purchase the business for that amount. The seller advised the parties that his attorney would attend to all details of the sale and the transfer of the business, including an assignment of the lease of the business premises, the transfer of the liquor license and an inventory of the stock on hand. The seller further agreed to permit the prospective purchasers to operate the business during the transfer period.

The petitioner had no currently available funds. He endeavored to have Fook Hing Tong finance him without success. By way of available assets, petitioner testified that he had effected arrangements for a loan, when needed, in the sum of $2,000 without security, further asserting that the balance of $1,000 was available and could be raised by an additional mortgage charge upon his home. The court found that the respective interests, which the respondents did in fact contribute, were Fook Hing Tong and Chong Hing Tenn, the sum of $10,000 each, and Kui Hing Tenn, the sum of $5,000.

The trial judge further found that it had been agreed by and between the petitioner and respondents that the petitioner was to be in charge of the management and personnel of the business, and the respondent Chong Hing

Tenn in charge of the finances and legal matters; each to draw a salary of $250 per month in addition to his respective share in the business. Under this management arrangement, the party purchasers took over the operation of the Green Mill with the aid and under the supervision of the sellers during the period in which the completion of the transfer of the lease and the liquor license were being effected and an inventory of the stock was being completed. The consummation of the sale of the business was found to be on or about October 20, 1941, retroactive to October 1, 1941; and that from on or about September 15, 1941, to October 20, 1941, the business was operated under the dual management of the petitioner and respondent Chong Hing Tenn. Differences arose between the petitioner and the respondent Chong Hing Tenn during the trial management period. The petitioner made letter protest to the respondent Fook Hing Tong citing the interference of his brother, Chong Hing Tenn, in certain operational phases of the business. The respondent Fook Hing Tong then being on the island of Maui, replied to both the petitioner and respondent Chong Hing Tenn on October 6, 1941, and expressly reaffirmed the oral agreement among the party purchasers and reassured the petitioner that he was to share in the business to the extent of a three-share interest upon the express condition that he make contribution of the amount representing his three-share interest as agreed upon.

Evidence of the petitioner's failure to tender this amount is uncontradicted. He asserted the twofold reason for his failure to do so; first, that no demand was made upon him; second, the letter assurance and reaffirmance of the respondent Fook Hing Tong that he would be permitted to participate in the purchase upon the condition that he tender his contributive share.

During the period in which the transfers were being consummated by the attorney for the sellers, the petitioner asserts that his exclusion in the proposed partnership came to his attention for the first time. He thereupon borrowed the sum of $75 and proceeded to Maui to confer with the respondent Fook Hing Tong where he again endeavored to have him finance the contribution of his three-share interest. Fook Hing Tong refused. On April 5, 1944, approximately two and one-half years after the formation of the copartnership between the respondents, the original bill herein was filed.

Upon examination of the transcript of evidence, this court finds the testimony adduced in the court below upon all material issues patently saturated with evasive, contradictory and conflicting statements. The trial judge converted this testimony into the findings of fact hereinabove set forth. Upon the entire record now before us, this court in the circumstances, resorts to and adopts the established rule that issues of fact, the determination of which by the trial court is dependent solely or in a great degree upon the weighing of conflicting testimony and the credibility of witnesses, are entitled to great weight upon review. (*De Souza* v. *Soares,* 22 Haw. 17; *McCandless* v. *Castle,* 25 Haw. 22; *Nawahie* v. *Goo Wan Hoy,* 26 Haw. 137; *Jellings* v. *Garcia,* 29 Haw. 698.) This adoption, however, has and does not preclude a review of the entire case with independent findings of fact and rulings by the appellate court, should the record on review so warrant. (*Pinheiro* v. *Pinheiro,* 32 Haw. 659.)

The sole question presented, therefore, is whether the evidence is such as to warrant the findings upon which the decree is premised, it being incumbent upon the petitioner-appellant seeking reversal thereof to disclose error or sufficient grounds warranting reversal of the decree

rendered.

The petitioner asserts that bad faith and fraud were practiced upon him by the respondents resulting in his exclusion from the copartnership as formed on October 20, 1941. From a review of the record and the facts established below, we find that the petitioner has failed to prove either bad faith, a violation of or exclusion from the oral agreement that he become a party purchaser, a violation of confidence reposed by him in the respondents, or fraud perpetrated upon him by any or all of the respondents.

The crux of the petitioner's position, which we deem to have been affirmatively established by the testimony as found by the trial judge, is one of nonperformance. The record bears no recession or cancellation of the original agreement which entitled the petitioner to participate in the purchase conditioned upon the payment of his contributive share of $3,000, by any or all of the respondents, or by the petitioner himself. Under the oral agreement with the seller fixing the time of payment of the purchase price as October 1, 1941, a limitation of time for performance by the petitioner, during which he was to tender his contributive share, was fixed and agreed upon. Of this limitation and due date the petitioner, as a party to the very agreement, possessed positive and unequivocal knowledge and notice. In addition to the fact that the experimental period of operation by the party purchasers was to terminate on October 1, 1941, during which period the petitioner had ample opportunity to tender his contributive share, the evidence further discloses that the sale, by way of execution of all requisite documents and transfers, was not consummated until October 20, 1941, retroactive to October 1, 1941. The petitioner was, by operation of time and with the acquiescence of the respondents,

gratuitously accorded an extra period of dispensation in which to tender his contributive share. During this twenty-day period of additional concession, the petitioner failed to perform, and has not, in our opinion and as found by the trial judge, established any valid reason for his default. The letter of October 6, 1941, from Fook Hing Tong to the petitioner, fourteen days prior to the actual consummation of the sale, contains an affirmance that the original agreement between all party purchasers, including the petitioner, was still in effect, though the trial period and the due date of the purchase price on October 1, 1941, expired six days prior thereto. The period within which the petitioner could have tendered his contributive share was thereby extended to October 20, 1941. Of this extension of time in which to perform, the petitioner was also given notice. The trial judge found that as of October 1, 1941, the petitioner unquestionably possessed a right upon making contribution of the sum of $3,000 to share in the business to that extent. In this we concur. Upon review of the record we are of the opinion that in addition thereto, the petitioner possessed an extended right and period of performance to and including October 20, 1941, the date of the consummation of the sale.

The purchase price was payable by the party purchasers on October 1, 1941. The petitioner, as a party to that oral agreement, was aware of and so bound, as were all the party purchasers, by this due date of payment. The record reveals no denial by the petitioner of notice or understanding of this fact. On the contrary, he affirmatively alleges such to be the fact in his bill.

The record leaves no doubt that the petitioner originally intended, together with the respondents, to become a party purchaser and enter into the liquor and restaurant business as agreed upon. It affirmatively discloses that

he did not, however, pursue this intention by performance. The record further discloses that petitioner's right of contribution was expressly conditioned upon tender of his contributive share as agreed upon. This he failed to do.

The respondents, upon petitioner's default, contributed the sum of $25,000, which was paid to the sellers as the purchase price of the business as agreed upon. They thereupon formed and registered a copartnership between themselves excluding the petitioner, to the end that they, as the remaining party purchasers, would be qualified to render continuity to the operation of the business in conformance with the attending legal requisites. The petitioner failed to tender his contributive share to the enterprise and has given no valid excuse for failing to do so, and was thereby precluded from participating therein as a result of this failure. He has further failed, in this court's opinion upon review of the record, to establish his asserted right to be presently included as a member of the copartnership formed on October 20, 1941, retroactive to October 1, 1941.

The respondents, on the contrary, violated no confidence the petitioner reposed in them, violated no oral agreement entered into between the original party purchasers, displayed no bad faith, nor practiced or perpetrated fraud upon the petitioner in respect of his exclusion from membership in the registered copartnership. They elected to adhere to their original agreement as party purchasers and pursuant thereto contributed their respective shares as agreed upon. They further acquiesced in and accorded the petitioner the extended period of grace above referred to during which time he also failed to perform. He admittedly defaulted.

Upon the entire record on review, whether or not the original oral agreement between the parties to the proceed-

628

ing constituted a copartnership or joint adventure binding them with the legal incidents flowing therefrom, is not pertinent to the disposition of the issues of facts presented which are determinative of the sole question presented on appeal.

Measuring the findings of fact of the trial judge by affixing the weight attributable to them under the ruling adopted, *supra,* this court finds that the evidence below warranted the findings made.

No reason having been established on review for disturbing those findings, the decree dismissing the bill is affirmed.

*D. R. Castleman, Jr.,* and *H. K. H. Lee* (also on the briefs) for appellant.

*T. M. Waddoups* (*Robertson, Castle & Anthony* with him on the brief) for appellees.