## THOMAS B. JONES *v.* ARMIDA B. SMITH DIEKER, ALSO KNOWN AS ARMIDA B. SMITH, EMMA KWOCK CHUN AND BANK OF HAWAII.

### NOS. 2817 AND 2821.

ARGUED APRIL 30, MAY 1, 1952.                  DECIDED JUNE 30, 1952.

LE BARON AND STAINBACK, JJ., AND CIRCUIT JUDGE
BROWN IN PLACE OF TOWSE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY LE BARON, J.

This is an appeal by a lessee consolidated with a cross appeal by one of two lessors, both appeals being from the same decree. The decree granted, for the benefit of the lessors, the equitable relief of impressing a trust upon moneys on deposit in a bank savings account and the incidental relief for recovery of rent in arrears. It granted, for the benefit of the lessee, the equitable relief of a proportionate share in the proceeds realized from insurance on furniture destroyed by fire as a credit or offset against the amount of rent in arrears. The respondent Dieker is the lessee and will hereinafter be designated as "lessee." She appeals from those portions of the decree which granted relief to one lessor as petitioner and to the other lessor as one of three respondents, and which awarded attorney's fees and charged a lien therefor on the moneys deposited in the savings account. The petitioner and respondent Chun are the lessors and will hereinafter be designated jointly as "lessors" and severally as the "petitioner" and "respondent lessor." The petitioner cross appeals from that portion of the decree which granted relief to the lessee. The respondent lessor does not appeal. The Bank of Hawaii is the third respondent as the one holding the moneys on

deposit in the savings account in the joint names of the petitioner and the other two respondents, with respect to which account the lessee had been the sole depositor in paying rent under the terms of the lease. It does not appeal from the decree and will be hereinafter designated as "respondent bank." Both the appeal and the cross appeal challenge as error the particular findings of fact and of law on which the presiding judge in equity predicated various portions of the decree to which the appeal and cross appeal relate as the case may be.

The paramount issue presented by the appeal, as distinguished from the cross appeal, is whether the facts and circumstances under which the lessee left the leased premises after fire admittedly had partially destroyed or damaged the main building thereon constituted an abandonment in breach of lease so as to render her liable for rent, or whether the conduct of the lessors after the fire amounted to a constructive eviction on their part as an affirmative defense of the lessee. That issue as one of constructive eviction will be resolved first and then questions also presented by the appeal will be dealt with. Thereafter, the cross appeal will be considered.

The pertinent provision of the lease agreement between the lessors and the lessee reads: "* * * in case said buildings and improvements [on the leased premises] * * * shall at any time be destroyed or damaged by fire, then * * * the Lessee shall rebuild and reinstate or replace and repair said buildings and improvements according to the original plan and elevation, or according to other plans and specifications approved by the Lessors in writing * * *." That clear and unambiguous provision means exactly what it says and unquestionably applies to the instant case where the main building on the leased premises was in fact partially destroyed or damaged by fire during the term of the lease. Under it, the lessee was obligated either to rebuild

and reinstate or to replace and repair that building according to the original plan and elevation or according to other plans and specifications approved by the lessors in writing.

The undisputed evidence is that the lessee has at no time, since the fire partially destroyed or damaged the leased building, rebuilt and reinstated or replaced and repaired it. Moreover, she admittedly never had any intention to perform her obligation to do so "according to the original plan and elevation," and has never been in a position to do so "according to other plans and specifications approved by the Lessors in writing * * *," inasmuch as no such plans and specifications have ever been in existence. The lessee obviously has not performed her obligation toward the partially destroyed or damaged building and is liable for rent under the terms of the lease unless she established below her affirmative defense of constructive eviction, which she argues on appeal has been accomplished.

The issue of constructive eviction is one of fact which was decided by the presiding judge in equity upon conflicting testimony and upon undisputed documentary evidence. That decision, while not conclusive, is entitled to great weight because the presiding judge in equity as the trier of fact saw and heard the witnesses and was in a better position to pass upon their credibility and to weigh their testimony than is this court. (See *Nawahie* v. *Goo Wan Hoy*, 26 Haw. 137; *Jellings* v. *Garcia*, 29 Haw. 698; *Hung C. Ching* v. *Fook H. Tong, Et Als.*, 38 Haw. 616.) But he was in no better position than is this court to evaluate the undisputed documentary evidence. Nor does this court in reviewing such testimony and evidence find any reason upon which to disturb the findings of fact made by the equity judge or so much of the decree as is based thereon.

No useful purpose would be served by setting forth the conflict in the testimony. Suffice it to say that the conflict therein concerns negotiations, which the parties to the

lease commenced immediately after the fire, to arrange for the lessee's rebuilding and reinstating or replacing and repairing the partially destroyed or damaged building. Those negotiations, however, culminated in an exchange of letters between the lessors and the lessee, and the undisputed documentary evidence thereof became the final embodiment of such negotiations. That evidence, therefore, controls and is determinative of the issue before this court. The lessee contends that it proves that she acted reasonably and diligently to have the lessors approve in writing adequate plans and specifications, and that she was forced to vacate the leased premises by reason of the uninhabitable condition of the partially destroyed or damaged building and by reason of the unreasonable and uncooperative conduct of the lessors. She predicates that contention with respect to their conduct on the argument that the evidence establishes that the lessors not only capriciously and unreasonably rejected a sketch plan which she submitted to them for their written approval but arbitrarily refused to cooperate with her for the purpose of arriving at acceptable plans and specifications. If that contention and argument were tenable, the probative effect of the evidence would operate to constitute a valid ground of constructive eviction and establish her affirmative defense. But this court in weighing such evidence finds that it has the opposite probative effect.

The very character of the sketch plan, submitted by the lessee and rejected by the lessors, on its face justified its rejection, it being patently incomplete and amounting to nothing more than a mere working basis from which adequate plans and specifications might be drawn. This was immediately called to the attention of the lessee by the lessors, who, in a letter to her, correctly characterized that plan as being "insufficient" and gave sound reasons for so

characterizing it. In rejecting such a plan the lessors acted in conformity with their prior recognition of sound law, as made in their first letter to the lessee, "that the approval of the lessors cannot be unreasonably or capriciously withheld; that a subjective standard of reasonableness applies." Nor did the lessors, as contended, refuse to cooperate with the lessee. On the contrary, they promptly declared by letter, after receiving the sketch plan, that "The lessors are ready and willing to approve any adequate plans and specifications submitted by * * * [the lessee] which are at all reasonable." At this juncture it is pertinent to note that the recognition of a subjective standard of reasonableness on the part of the lessors, as well as their declaration of readiness and willingness to approve any adequate and at-all-reasonable plans and specifications, epitomizes the position taken by them from the time of the fire, despite the testimony of the lessee which disputes that such a position was so taken before the letters of the lessors affirmatively established it. In subsequent letters to the lessee, the lessors reiterated that the sketch plan is "not acceptable" and finally stated that "Obviously, the Lessors cannot accept a makeshift such as you propose" by such sketch plan. They likewise repeatedly requested that she "submit plans and specifications to them for approval." Nevertheless, the lessee submitted none but insisted throughout that the lessors accept her insufficient and unacceptable sketch plan. On being advised by the lessors relative to the sketch plan that "The proposed reconstruction would constitute a liability to the Lessors upon the conclusion of the lease," the lessee wrote to the lessors that "I have no other alternative but to consider myself evicted by your actions" and gave notice that she was vacating the leased premises forthwith, which she did. The lessors then wrote to the lessee and informed her that her abandonment of the leased premises did not

terminate the lease and advised her that she is "still bound by the terms of said lease, including your obligation to pay delinquent rents."

This undisputed documentary evidence portrays in camera the pertinent facts and events of the case. It conclusively proves that the lessee wholly failed to sustain her burden of establishing an affirmative defense of constructive eviction. The lessee, therefore, had no valid excuse for not performing her obligation to rebuild and reinstate or replace and repair, which she claims she elected to do, not "according to the original plan and elevation" but "according to [nonexisting] other plans and specifications approved by the Lessors in writing." Obviously, that election did not suffice as performance but made it incumbent upon her to employ reasonable diligence toward bringing those plans and specifications into existence, as a condition precedent to any performance according to them. She, however, did nothing which reasonably tended to meet that condition. The lessee neither made nor submitted any specific plans and specifications for the approval of the lessors. On the contrary, she ignored their requests for such plans, as well as their written offer to approve those which would be adequate or at all reasonable. She blindly persisted in her insufficient and unacceptable sketch plan and ultimately vacated the leased premises. Her conduct throughout thus manifested an intention not to perform her obligation with respect to the partially destroyed or damaged building, as required of her by the terms of the lease. Such conduct on her part, therefore, constituted a willful disregard of obligation and a willful abandonment of the leased premises, which did not relieve her of her liability to pay rent, even though the fire may have rendered the main building on those premises uninhabitable, she having the expressed obligation to cure that situation and having allowed such situation to deteriorate. (See *Peter-*

*son* v. *Frazier*, 18 Haw. 457.) Certainly the conduct of the lessors in attempting to hold the lessee to the terms of the lease was proper and in no way constituted either actual or constructive eviction on their part. The contention and argument of the lessee to the contrary are without merit and the issue of constructive eviction as presented by the appeal is resolved in the negative.

The appeal presents the question of reasonable attorney's fees, as awarded by the decree to the petitioner for the collection of half of the rent in arrears as his share of the rent due. The answer thereto depends upon whether such an award violates the familiar general rule that attorney's fees cannot be awarded as damages or costs where not so provided by statute, stipulation or agreement. (See *Young Chun* v. *Robinson*, 21 Haw. 368; *Estate of Lee Chuck*, 33 Haw. 221; *Mid-Pacific Dress Mfg. Co.* v. *Cadinha*, 33 Haw. 456.) Within that rule, such answer further depends upon the applicability of the pertinent lease provision, which reads "That should the lessee become in arrears of rent hereunder and the lessors institute suit or other form of proceeding for the collection of said rent in arrears, the lessee will bear all expenses incurred by the lessors in such suit or proceeding, including a reasonable attorney's fee." The lessee contends before this court that such provision must be strictly interpreted so as not to apply to a suit for the collection of rent in arrears when it is instituted by but one of the lessors, as in the instant case. She, however, did not voice that contention below. Nor did she there challenge the award of reasonable attorney's fees to the petitioner, which presumably was made under a liberal interpretation of that provision. On the contrary, she did not object, but expressly admitted below that "Petitioner is entitled to attorney's fee in connection with so much of the present action as involves the collection of rent in arrears," pursuant to which the decree awarded

such a fee. The lessee therefore is in no position, and will not be heard, to complain for the first time on appeal. Nor will the question be further considered.

The next question presented on appeal is whether it was error to have allowed the respondent bank an attorney's fee in the sum of one hundred dollars. In this instance, the lessee duly objected below and as a ground of objection invoked the general rule against the awarding of an attorney's fee where not so provided by statute, stipulation or agreement. Admittedly, there is no applicable statute, stipulation or agreement to be found which provides for such an award. Nor was the respondent bank at the time of suit a trustee or clothed with the duties and responsibilities of one so as to bring it within the exception allowing costs to trustees as enunciated by this court in *Evans* v. *Garvie*, 23 Haw. 694. On the contrary, it was the debtor of the lessors and lessee as joint creditors, in the amount of the moneys deposited in the savings account including interest, and legally bound to pay that debt upon presentation of a duly signed withdrawal slip or receipt. Nor did the decree purport to change that debtor-creditor relationship into a fiduciary relationship other than to impress a trust, which operated as an equitable subrogation of the lessors in place of the lessee, so as to reduce the number of joint creditors from three to two. As a party respondent in equity, the bank thus stood in a position analogous to that of a garnishee at law. The general rule, invoked below and on appeal, therefore applies and the question as presented is answered in the affirmative.

The next question presented by the appeal is whether it is error to have charged the moneys on deposit in the savings account, after those moneys became impressed with the trust, with a lien for the attorney's fees awarded to the petitioner. Assuming, but not deciding, such protection afforded the attorneys for the petitioner to be unnecessary

as well as erroneous, the lessee would not be prejudiced where, as here, she had become delinquent in payment of rent and had no interest whatsoever under the terms of the lease in those moneys or in that account for which the decree gave her full credit in arriving at the amount of rent in arrears. Nor would any substantial rights of hers be affected or impaired thereby. The question therefore involves no prejudicial error and need not be considered. (See *Castle* v. *Irwin*, 25 Haw. 807.)

A further question is presented by the appeal as to whether it is error for the decree to have charged interest on the moneys on deposit in the savings account. But the decree did not do so. It rather charged interest on the rent in arrears from the time that rent became due under the terms of the lease. The question, therefore, does not arise under the decree and is improperly presented on appeal. It therefore need not be considered.

The cross appeal presents but one question of law, whether the lessee is entitled to any of the proceeds realized from the insurance on furniture destroyed by fire, such proceeds being in the sum of $5000, out of which the decree awarded the lessee $902 as her proportionate share and as a credit or offset to the amount of rent in arrears. Under the lease agreement the lessee was obligated to keep in good repair "all furniture * * * belonging to the Lessors," to "at her own expense * * * replace furniture * * * which may be lost or destroyed," to keep insured "all furniture * * * against loss or damage by fire * * * in the joint names of the Lessors and the Lessee, and in an amount equal to the full insurable value thereof * * *, loss if any payable to the Lessors * * *." The lease further provides that, in case the proceeds realized from insurance on such furniture destroyed or damaged by fire "shall be insufficient in amount to so * * * replace and repair, the Lessee shall make up the deficiency out of her own funds." Under these provisions,

the lessee was required to keep the furniture of the lessors fully insured for their benefit consistent with her obligation to replace at her own expense any lost or destroyed furniture of theirs, as well as with her obligation to make up out of her own funds any deficiency of insurance proceeds in replacing or repairing such furniture. Pursuant thereto the lessee kept insured the furniture of the lessors against loss or damage by fire. In substantial compliance, she did so presumably in the joint names of the lessors, they being the sole assured. But apparently she did not fully insure their furniture, the policy covering that furniture being in the amount of $5000 and the replacement value of such furniture being more than three times that amount, as evidenced by the lessee's inventory thereof, as well as found by the chancellor. Before the fire the lessee from time to time replaced lost or destroyed furniture of the lessors with furniture of her own, and at the time of the fire had some of her own as her separate property in the partially destroyed or damaged building. But she had not insured that separate property and had no insurable interest in the original or replaced furniture of the lessors. Nor was her own furniture covered by the insurance on the furniture of the lessors, the lessee not being named as an assured, even though she took out the policy and paid the premiums. When the furniture of the lessors, so covered by insurance, was destroyed by fire, the insurance company paid the lessors, as the sole assured, the full amount of the policy in the sum of $5000, which, as already indicated, was insufficient in amount to replace their destroyed furniture and equaled but a fraction of its replacement value. But the lessee has not performed her obligation under the lease to make up the deficiency out of her own funds. Under these facts and circumstances, the lessee had no valid claim in law or in equity to any share in the proceeds in the hands of the lessors which they realized from insurance on their

furniture destroyed by fire. Nor did she have any valid defense against being required to make up the deficiency or any valid offset against the amount of rent in arrears by mere reason of the fact that the fire also destroyed her own furniture, irrespective of what value it may have had. It therefore would be sustaining a pure gratuity at the expense of the lessors for this court to uphold the decretal award to the lessee of a share in the insurance proceeds as made below. The question presented on cross appeal is answered in the negative.

The decree is affirmed in all its portions except that portion which awards to respondent bank an attorney's fee and that which awards to the lessee a proportionate share in the proceeds realized from insurance on furniture destroyed by fire. As to those two portions, the decree is reversed and the cause remanded below with instructions to delete such portions from the decree and accordingly to modify the decree so as to make the necessary adjustments in its result, consistent with this opinion.

*D. C. Lewis & W. W. Saunders* (*Lewis, Kimball & Buck* and *W. W. Saunders* on the briefs) for petitioner-appellee, cross-appellant Jones.

*F. Schnack* (*H. C. Schnack* with him on the briefs) for respondent-appellant Dieker.

*H. Y. C. Choy* (*Fong, Miho & Choy* concurring in answering briefs of petitioner-appellee Jones) for respondent-appellee Kwock.