## SAKI OTANI *v.* GEORGE OTANI.

### No. 1747.

Argued August 19, 1927.        Decided September 24, 1927.

Perry, C. J., Banks and Parsons, JJ.

62

OPINION OF THE COURT BY BANKS, J.
(Perry, C. J., dissenting.)

This is a motion for the allowance of an attorney's fee for services rendered in this court. The parties to the motion were divorced February 12, 1919, and the custody of their minor child was awarded to the mother, who was the libelant. The decree of divorce also provided that the libelee (the husband) should pay to the libelant (the wife) the sum of $25 per month as permanent alimony. Subsequently the decree was modified and the libelee was required thereafter to pay to the libelant the sum of $40 per month as alimony and for the support of the minor child. On December 30, 1926, the libelee filed in the court of domestic relations a motion asking for a further modification of the decree of divorce. The modification thus sought was that the custody of the minor child be transferred from the libelant to the libelee and that the provision awarding alimony be stricken from the decree. On February 7, 1927, the judge of the court of domestic relations entered an order eliminating from the decree the provision for the payment of alimony and awarding the custody of the child to the libelee. From this order the libelant appealed to this court. On June 24, 1927, this court handed down an opinion affirming the order appealed from. (See *Otani* v. *Otani*, 29 Haw. 866.) In the preparation of the appeal from the aforesaid order and its prosecution before this court the libelant was represented by Messrs. Schnack & Tracy, members

of the bar of this court. On June 28, four days after the opinion of the court affirming the order appealed from had been rendered and after the services of Messrs. Schnack & Tracy in connection with the preparation and argument of the appeal from said order had been performed, the instant motion was filed. The motion contains a request that this court allow Messrs. Schnack & Tracy a reasonable fee for their services, rendered on behalf of the libelant (appellant) on her appeal from the aforesaid order. Although the motion does not ask that the libelee be required to pay whatever fee, if any, may be allowed we will assume that such was one of its purposes. Our justification for this assumption is that the motion seems to have been so regarded by counsel on both sides. It is alleged in the motion that it is based on the records and files herein and the affidavit of F. Schnack, a member of the firm of Schnack & Tracy. The affidavit of Mr. Schnack shows that his firm had performed certain services in behalf of the libelant in connection with the appeal and that such services so performed are reasonably worth the sum of $250 and that his firm has received no money whatever for such services. It is also apparent from the record that the libelant was, at the time the motion was filed, without sufficient means to pay her counsel for the services so rendered.

The question for our consideration and decision, therefore, is whether under the facts and circumstances now before us we should order the libelee (the former husband of the libelant) to compensate the latter's counsel for services performed by them in this court in her behalf in connection with an order modifying the decree of divorce, which services were rendered by them prior to the filing of the instant motion. If the motion had been made before the services were rendered the question would be distinctly different. Such

a motion would have been to require the former husband to advance to the indigent former wife money with which to employ counsel to protect her rights involved in the appeal, which rights otherwise might be jeopardized and perhaps utterly lost. The motion before us, however, is to require the former husband to compensate counsel, who, before the motion was made, had already appeared in this court in behalf of the indigent former wife and had already done all in their power to protect her rights in the appeal.

From what source do we derive our power to deal with the matter under consideration and what are the limitations upon that power? In *Gomes* v. *Gomes,* 25 Haw. 793, this court held that the power was an inherent one and was not derived from legislative enactment. In support of its conclusion that the power was not derived from statute the court quoted in its opinion section 2935, R. L. 1915, which is identical with section 2978, R. L. 1925. This section is as follows: "Whenever it shall be made to appear to the judge after the filing of any libel, that the wife is under restraint or in destitute circumstances, the judge may pass such orders to secure her personal liberty and reasonable support, pending the libel, as law and justice may require, and may enforce such orders by summary process. The judge may also compel the husband to advance reasonable amounts for the compensation of witnesses and other reasonable expenses of trial to be incurred by the wife. The judge may revise and amend such orders from time to time." In commenting on this statute the court said in the *Gomes* case, at page 795: "It seems too clear to permit of argument that the above statute deals only with the authority of circuit judges at chambers to grant temporary alimony and expenses of trial and is neither a grant of

authority to, nor a limitation upon the authority of, this court to deal with that subject."

As great as is our hesitation to overrule a former decision of this court we nevertheless are brought to the conclusion, after mature deliberation, that on this point *Gomes* v. *Gomes* does not state the law correctly. The statute manifestly reflects the legislative will on the subject of a husband's obligation to advance to his wife money with which to defray the expenses of the trial, and it also reflects the legislative will as to the circumstances under which he may be compelled to discharge this obligation. It is true this court is not specifically mentioned in the statute but it is equally true that the legislative intent is clearly inferable from the language employed and that intent was that the courts of the Territory having jurisdiction of the matter should only have the power to require the husband to advance counsel fees to his wife under the circumstances enumerated in the statute. The term "the judge," as used in the statute, is evidently synonymous with "the court," and refers to whatever tribunal, whether this court or the circuit court, before which the libel is pending. This being so we feel equally bound with the circuit judges to yield obedience to this manifestation of the legislative will and to look to the statute alone in determining the course we should take in the matter now before us. *Gomes* v. *Gomes,* in so far and only in so far as it decides that the statute in question is not applicable to this court, is therefore overruled.

This brings us to a consideration of our power under the statute. It is contended by counsel for George Otani, the divorced husband, that under the statute the instant motion should be denied for two reasons, (1) because the statute does not authorize the allowance of counsel fees to a divorced wife in a proceeding to modify the decree of divorce, which proceeding was not brought

until long after the divorce had been granted; (2) that it does not authorize the allowance of such fees when it appears that the services had already been rendered and the proceeding ended before a request for such allowance was made.

It is claimed by counsel for Saki Otani, the divorced wife, that both these contentions are decided adversely to George Otani by this court in *Hart* v. *Hart*, 23 Haw. 639. We agree that the first contention is opposed by the *Hart* case and, notwithstanding the attack on its soundness, we think, to the extent to which it may be considered authority, it is sufficiently supported by reason and precedent to justify its approval. We think, however, for reasons which we shall presently give, that it is not authority against the second contention made in behalf of George Otani. With these views of the *Hart* case in mind let us consider it.

The Harts were divorced in 1916 and the husband by decretal order was required to pay alimony and counsel fees to the wife. Shortly after the decree the former wife committed an act of fornication whereupon her former husband filed a motion to have the decree modified so as to relieve him of the alimony and counsel fees. The circuit judge entered an order modifying the decree as to the payment of alimony but refused to modify it as to counsel fees. The former wife excepted to the order and noted an appeal to this court. Some months before anything was done by her towards perfecting her appeal she filed a motion in the circuit court which had granted the divorce and had subsequently modified the decree asking that her former husband be required to advance to her sufficient money to enable her to employ counsel to represent her in the contemplated appeal. The circuit judge denied the motion on the ground that he had no power under the law to grant it. An exception was taken to this ruling

and the matter was duly presented for review. This court reversed the lower court and held that the circuit judge, in an appeal from an order modifying a decree of divorce to the extent of relieving the former husband of his obligation to pay alimony, had the power to require the former husband to make the necessary advancement of counsel fees to his former wife to enable her to perfect and prosecute the appeal.

In respect to the orders modifying the decrees of divorce the instant case and the *Hart* case are sufficiently similar to make the principle announced in the *Hart* case entirely applicable to the instant case. Each of the decrees affected the former wife's right to alimony. Each of them was appealable and from each of them an appeal was taken. In the *Hart* case it was decided that under the statute the circuit judge had the power to require Hart, on motion made by his former wife before the appeal was taken and before any services had been rendered by her counsel in connection with her appeal, to advance to her a reasonable amount with which to employ counsel to perfect and prosecute her appeal. In giving its reasons for this conclusion the court said, at pages 644, 645: "We are of the opinion that the provisions of section 2935 R. L. are broad enough to include the allowance of expenses incurred or to be incurred by the wife in resisting an application for an order revoking an allowance of alimony contained in a decree granting her a divorce. It seems obvious to us that the wife might be as much in need of expense money in her efforts to protect the rights granted her by a final decree of divorce as she would be in need therefor in the proceedings had prior to said decree." This is clearly an adjudication that in a proceeding to modify a decree of divorce, when the modification sought affects the question of alimony, the court has the power, under proper circumstances, to require

the divorced husband to advance to his divorced wife funds with which she may procure counsel to protect her rights. As we have already intimated we are in complete accord with this conclusion.

It is contended, however, by counsel for Saki Otani, the movant herein, that the court not only decided that the divorced husband should advance money with which the divorced wife might compensate counsel for *services to be rendered* but that it also decided that he should pay for *services already rendered* by her counsel. We think the latter question was not within the facts that were before the court in the *Hart* case and therefore whatever was said on that subject was *dictum* and being *dictum* we cannot regard it as an authoritative ruling. Speaking on the subject of *dicta,* the Supreme Court of the United States, in *Carroll* v. *Lessee of Carroll et al.,* 57 U. S. 275, 286, 287, said: "This court * * * has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties. In *Cohens* v. *The State of Virginia,* 6 Wheat., 399, this court was much pressed with some portion of its opinion in the case of *Marbury* v. *Madison.* And Mr. Chief Justice Marshall said, 'It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent; other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' The cases of *Ex parte Christy,* 3 How., 292, and *Jenness*

*et al.* v. *Peck,* 7 Id., 612, are an illustration of the rule that any opinion given here or elsewhere cannot be relied on as a binding authority, unless the case called for its expression."

That the decision that Hart should have been required by the circuit judge to compensate Mrs. Hart's counsel for services *already rendered* in connection with her appeal (if it was the intention of the court to so decide) was not within the facts of the case and was not necessary to its adjudication and was *dictum* is manifest from the record in that case. This record discloses that the order modifying the decree of divorce was entered on July 10, 1916. An exception was reserved and notice of appeal given. On July 19 following Mrs. Hart filed a motion asking the circuit judge for an order requiring the libelee (her former husband) to contribute money to her for attorney's fees and alimony *pendente lite* "incurred and to be incurred" on her appeal from the order of the circuit judge modifying the decree of divorce. Two days prior to filing this motion she made an affidavit to the effect that she was desirous of appealing from the order modifying the decree of divorce and that she was "wholly without funds or money to pay the expenses and costs of said appeal, and wholly without funds or money to pay her attorney for his services *to be rendered and performed upon said appeal.*" (The italics are ours.) This affidavit alone of the entire record discloses the facts upon which the motion was predicated. There appears to have been no other evidence before either the circuit judge or this court. This evidence does not show that Mrs. Hart *had already incurred liability for attorney's fees* in connection with her appeal and there is nothing elsewhere in the record to indicate that she had incurred such liability. It appears from the affidavit that she was without funds to pay her attorney for his services

"to be rendered and performed" upon her said appeal. In fact, the motion was made before any steps were taken by her counsel to perfect the appeal. It was not until December 11, several months after the motion for counsel fees was filed, that she filed in this court a petition for a writ of error. The writ was issued on the same day that the petition was filed. In the brief of counsel for Mrs. Hart, filed in support of the assignments of error, is the following: "The third point which is set forth in libelant's assignments of error twelve, thirteen and fourteen is the refusal of the lower court to allow alimony, etc. pending the determination of this proceeding. The lower court held that the case was brought in this court in good faith, and under such circumstances our contention is that it is error for the lower court to refuse a reasonable sum as alimony, *costs and counsel fees to prosecute the appeal.*" (Italics ours.) This excerpt from counsel's brief strengthens the conclusion that the question we are now considering was not before the court in the *Hart* case and its decision was therefore not necessary to an adjudication of the right the appellant was seeking to establish. For the foregoing reasons we deem the question one of first impression in this jurisdiction and feel at liberty to decide it on principle and in accordance with what we conceive to be sound judicial precedent.

The theory upon which a man, whether he is the husband of the woman, or her divorced husband, is required to compensate her counsel in a divorce proceeding or some proceeding related thereto, is that if she is in such necessitous circumstances that she cannot employ counsel she will be at so great a disadvantage in the controversy that her rights may be seriously imperiled or completely lost. In order to prevent this calamity the law, in a fine spirit of justice, requires the man to come to her assistance. If, however, she by

some means of her own devising, no matter what—whether by money given her by sympathetic friends or by savings from her own meager means or by the use of her credit—actually procures and has the benefit of counsel throughout the entire litigation, she provides for herself the very protection which the man would otherwise be obliged to provide for her and the necessity of requiring the man to step into the breach and make this provision for her no longer exists and the theory of the law upon which his obligation rests is no longer applicable. His obligation is in no sense a contractual one from which either the woman or her counsel derives any rights. It is a duty imposed upon him for the woman's benefit. If through her own efforts, without seeking to require the man to aid her, she accomplishes the purpose for which the duty is imposed the duty itself ceases.

In *Gomes* v. *Gomes, supra* (which we overrule on another point), the court, in stating its reasons for requiring the husband to advance counsel fees to his wife, said at page 795: "Counsel is as necessary on appeal as in the earlier stages of the litigation and if the wife can have no allowance to enable her to employ counsel to represent her in resisting the husband's appeal she may be deprived of the right to appear on an equality with her husband." If the wife by using her own funds or her own credit places herself on this plane of equality, which equality is maintained throughout the litigation, there is no authority for requiring the husband to reimburse her for what she has thus expended or to pay an indebtedness which she has thus incurred.

In *Loveren* v. *Loveren,* 100 Cal. 493, the court had under consideration the following statute: "While an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony, any money necessary to enable the wife * * * to prosecute

or defend the action." In construing this statute the court, at pages 494, 495, said: "If the expenses of the action have been incurred or paid by her with means derived from her separate estate or upon her credit, then there can be no necessity for an allowance by the court to enable her to do that which she has already done, and without such necessity the court has no authority under the statute to make such an order. And no better evidence can be adduced of her ability in this respect than the fact that she has been able, as the record shows, to incur these expenses, and to pay them with money borrowed by her entirely upon the strength of her own credit. Expenses so incurred and paid may be, where it is proper to do so, taxable as costs in the case, but they cannot be made the basis of an order within the meaning of this statute granting an allowance therefor, and compelling the husband to pay them. Such an allowance can only be granted as to expenses necessary to be incurred in the future prosecution or defense of the action, and cannot be made for the payment of past expenses except where such payment is necessary to be made in order to enable the wife to further prosecute or defend her case."

In *Leak* v. *Leak*, 156 Fed. 474, the circuit court of appeals of the ninth circuit had under consideration the following statute: "After the commencement of an action, and before judgment therein, the court or judge thereof may, in its discretion, provide by order as follows: First. That the husband pay or cause to be paid, to the clerk of the court, such an amount of money as may be necessary to enable the wife to prosecute or defend the action, as the case may be. Second. For the care and custody and maintenance of the minor children of the marriage during the pendency of the action." In construing the statute the court said (p. 477): "It has been uniformly held in states having statutes similar to

section 471, pt. 4, of the Code of Alaska, before quoted, that the court in an action like this is only authorized to make an allowance to the wife for future expenses. Thus in Beadleston v. Beadleston, 103 N. Y. 404, 8 N. E. 736, it is said: 'The purpose of the statute is to furnish the wife means to carry on her action or to defend the same during the pendency thereof. The allowance looks to the future. There can be no necessity for an allowance to make a defense which has already been made or solely to pay expenses already incurred. * * * There is ample power in the court to make allowances from time to time to enable the wife to carry on her defense, and when she needs money for that purpose she must apply for it. But, if she has succeeded in making her defense from her own means, or upon her own credit, she cannot, before judgment, while the action is pending, have an order compelling her husband to pay such expenses; and there is no statutory authority in the court to make such an order, and thus to compel him to pay her debts.' "

Corpus Juris, Vol. 19, Sec. 549, p. 233, states the rule thus: "As a general rule no allowance can be had for counsel fees which have been already earned. Likewise, although there is some authority to the contrary, an allowance for the payment of past expenses cannot ordinarily be made, except where such payment is necessary to enable the wife further to prosecute or defend the case."

Our own statute indicates with perhaps greater precision than the California statute or the Alaska statute the circumstances under which this burden may be placed upon the husband. The reasoning of the California court and that of the ninth circuit court of appeals is just as applicable to our statute as it was to the statutes under consideration by those courts.

As has been foreshadowed, our conclusion is that the instant motion should be denied. There are decisions of

courts other than those which we have cited which support this conclusion. We do not deem it necessary to cite them for the reason that they can be found by referring to the quotation from Corpus Juris, *supra*.

It is suggested that the question of at what stage of the proceeding in a divorce libel or in a proceeding collateral thereto counsel fees may be awarded the wife, or the divorced wife, is not one of substantive law but one of practice merely, and, it having been decided in the *Hart* case that such award should under the statute be made not only for services to be rendered but for services already rendered, the decision should not be disturbed. Assuming that the question is one of practice merely—if the allowance of counsel fees for services already rendered the divorced wife had been within the facts of the *Hart* case we would be inclined to abide by the decision.

In *Wilder* v. *Colburn*, 21 Haw. 701, the court said at pages 702, 703: "The defendant demurred to the complaint upon the ground, among others, of a misjoinder of causes of action in that an action based upon a judgment as sought to be set forth in the first count was joined with counts for claims for unpaid taxes as set forth in the other counts. In the case of *Harrison* v. *Magoon,* 13 Haw. 339, 358, it was held that an action on a judgment is, within the meaning of our statute (Civ. Laws, Sec. 1259; R. L. Sec. 1743), an action *ex contractu* on the promise, or contract implied by law to pay the amount of the judgment, and that a count upon a judgment may be joined with another upon contract express or implied. The plaintiff-in-error contends that a judgment is in no proper sense a contract or agreement between the parties, and claims that the case cited was wrongly decided. We are not disposed to consider the contention on its merits. The point presented is one of mere practice under the statute which

should be regarded as settled, and we adhere to the ruling made in that case. A question of this kind having once been definitely decided, should and generally will be regarded as settled. 11 Cyc. 748; *Mosher* v. *Huwaldt,* 86 Neb. 686."

It is apparent from reading the opinion in *Harrison* v. *Magoon* that the question of practice therein decided, and approved in *Wilder* v. *Colburn,* was before the court and its decision was an authoritative adjudication. As we have already pointed out, however, the question now before us was not involved in the *Hart* case and therefore it was not authoritatively adjudicated. Under these circumstances we feel it our duty to establish a precedent that is in conformity with our construction of the statute and also in accord with the great weight of judicial precedent.

We do not mean to decide, and we do not decide, that under no circumstances is a wife, or even a divorced wife, entitled to a judicial order requiring her husband, or her divorced husband, to compensate her counsel for services already performed in her behalf in a divorce proceeding or in some matter incidental to and growing out of such proceeding. What the facts before us require us to decide and what we do decide is that in an appeal by a divorced wife from an order modifying the decree of divorce to the extent of relieving her divorced husband of an obligation imposed upon him, by the decree, to pay alimony to her, and taking the minor child of the parties from her custody and giving it into the custody of the divorced husband, the divorced husband should not be required to compensate the attorney of the divorced wife for services rendered her, in connection with the appeal, when no request for such compensation is made until after the services of her attorney have been rendered and his further services are no longer required to protect her rights.

The motion is denied.

*F. Schnack (Schnack & Tracy* on the briefs) for the motion.

*E. J. Botts* (also on the briefs) contra.

### DISSENTING OPINION OF PERRY, C. J.

Eight years ago the wife in this case was granted a divorce from the husband on the ground of extreme cruelty. By the same decree the husband was required to pay her $25 per month as permanent alimony and the custody of a minor child was awarded to her. Later, upon the motion of the wife for an increase in the amount of her permanent alimony, the decree was modified so that the husband was required "to pay to libellant the sum of $40 per month as alimony and for the support of libellant and the minor child of said marriage". The husband recently moved for a further modification of the decree so as to transfer the custody of the child from its mother to its father and so as to put an end to the allowance of alimony to the wife, on the ground that the mother had at various times committed adultery and was no longer a fit and proper person to have the custody of the child. The trial judge found the essential allegations of the motion to be true, granted it, ordered the payments of alimony to cease and placed the child in the custody of the father. From that modification of the decree the wife appealed to this court. Upon the appeal the order of the trial judge was sustained. Thereafter, in this court, counsel for the wife moved for the allowance of a counsel fee to the wife, to be paid by the husband, for services rendered upon the appeal in this court. The question before us is whether the husband can be required to pay the fee.

The case was presented, in the briefs and on oral argument, evidently upon the belief or assumption by counsel that the original decree, as first modified, did

not secure any alimony to the wife but secured merely a payment to her of a stated monthly sum for the support of the child. Upon that assumption, the latest contest was one purely with relation to the custody of the child and not in any wise with relation to an allowance of alimony secured to the wife. Whether under those circumstances this court would have the authority to require or would be justified in requiring the husband to pay to the wife the amount of her attorney's fee need not be considered.

Under the facts as they actually occurred, the latest contest, while it did involve the question of custody of the child, did also involve the prior grant of alimony to the wife. It was an effort by the husband, resisted by the wife, to terminate payments of alimony to her. It is settled in this jurisdiction that an allowance for counsel fees may be granted to the wife at the expense of the husband under these circumstances, that is to say, even after decree when the effort is to deprive the wife of the right to alimony secured to her by the decree. *Hart* v. *Hart*, 23 Haw. 639. It is said, however, that no allowance of counsel fees can be had in this particular case because the application for them was not made until after the rendition of the services by the attorney. Upon this point, also, this court has spoken. In the same case of *Hart* v. *Hart*, on pages 644, 645, this court said: "We are of the opinion that the provisions of section 2935 R. L." (section 2978, R. L. 1925) "are broad enough to include an allowance of expenses incurred or to be incurred by the wife in resisting an application for an order revoking an allowance of alimony contained in a decree granting her a divorce." Whether this view of the law upon this point should prevail, were the question now arising for the first time in this jurisdiction, I need not consider. But the question at least is a debatable one. The language of the

statute is that "the judge may also compel the husband to advance reasonable amounts for the compensation of witnesses and other reasonable expenses of trial to be incurred by the wife". The words "to be incurred" are susceptible of the construction that they refer to expenses which may be incurred by wives instituting divorce cases after the date of the enactment, rather than expenses which may be incurred after the making of the order to the husband to pay. The question is not one the decision of which would be of widespread application, nor is it of very great importance. An award of counsel fees can be applied for and obtained as easily *in limine* as at the end of the case. No principle of right or wrong or even of policy is involved. It is practically a question of procedure only. Under these circumstances, I see no sufficient justification for overruling *Hart* v. *Hart* and considering the question as though it were a new one. On the contrary, it seems to me that we should follow the opinion and conclusion of this court rendered in that case ten years ago.

It is suggested that the expressions on the subject in *Hart* v. *Hart* are *obiter dicta*. But it seems to me that the suggestion is not well founded. The motion in the trial court in that case was for counsel fees and other expenses "incurred or to be incurred" by the applicant. This court in its statement of the facts said, at page 643, that the motion was for an order granting the applicant attorney's fees "incurred or to be incurred". It decided that the statute was broad enough to include the allowance of expenses "incurred or to be incurred" and in the concluding paragraph of the motion, it referred to the order of the circuit judge then under review as being one wherein he had disallowed plaintiff's motion for attorney's fees "incurred or to be incurred"; and the cause was remanded to the trial court for further proceedings not inconsistent with the views of this

court, i. e., with instructions to make an allowance for expenses "incurred and to be incurred". This court clearly understood at that time from the record before it that the motion was for fees incurred as well as for fees to be incurred and there was ample support for its belief in the record. The mere fact that the applicant in her affidavit supporting the motion said that she had not sufficient means wherewith to pay the expenses to be incurred on the appeal and did not refer to expenses already incurred, cannot avail, as it seems to me, to render the expressions of this court *obiter dicta*. The issue was raised by the pleadings, irrespective of the state of the evidence. Neither the decision of the lower court nor that of this court was based upon the state of the evidence relating to the wife's necessity. In both courts the question considered was that of power or lack of power under the statute. The fact that the question was not argued in the briefs does not render the opinion *obiter dictum*. It was presented by the motion then before the court.

In the case at bar there is nothing to show that the attorneys for the wife, in accepting the employment, relied upon the wife's property or credit. That she had no property, other than an equity of no salable value, was shown by testimony adduced in this very case at a hearing before this court on July 27, 1927. It may as well be that the attorneys relied upon the view of the law that an allowance to the wife could be made by this court after the rendition of the services as well as before. The practice in this jurisdiction has been such as to excuse the wife and her counsel if they entertained such a view. Both in the circuit courts and in this court applications for attorneys' fees for the wife, in divorce cases, have been made and granted irrespective of whether the services had been rendered, in whole or in part, or were still to be rendered.

While differing as to the construction that should now be placed on section 2978, R. L. 1925, I concur in the view that that section applies to this court as well as to trial judges and limits our powers with reference to the allowances that may be granted to a wife in divorce cases; and that in this respect the decision in *Gomes* v. *Gomes*, 25 Haw. 793, ought not to be followed. Direct appeals to this court are permitted from decrees of the circuit judges in such cases. "The judge" referred to in that section is the court, whether trial or appellate, at the time trying the issues between the parties.

In my opinion the husband should be required to pay to the wife a reasonable amount as a fee for her attorneys.