PATRICIA M. KAHL *v.* ARNOLD E. KAHL.

No. 4506.

APRIL 27, 1967.

RICHARDSON, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY CASSIDY, J.

In this proceeding a decree was entered on April 20, 1964, granting the husband (libellee, cross-libellant, appellee) a divorce on his cross-libel filed on August 31, 1963. The wife (libellant, cross-libellee, appellant) had withdrawn her libel. Among other provisions of the decree, custody of one of the couple's two children was awarded to the wife and the husband was ordered to pay $100.00 a month for his support. The husband was also ordered to pay the wife $270.00 a month until further order of the court with the payments to be charged against her interest in the joint property. The matter of the division and distribution of the property of the parties was reserved and continued "pending a determination by James W. Y. Wong, C.P.A., pursuant to agreement of the parties, of a valuation of the business of the parties known as 'The Buzzburger.'" The husband's cross-libel had prayed for a division of the joint property.

It appears from the clerk's minutes that on October 30, 1964, Mr. Euton S. Y. Wong, C.P.A., was called as a witness to establish, in accordance with the reservation of the decree, the value of the Buzzburger business. He was on the stand on each of the day's two sessions. His testimony has not been made a part of the record. However the clerk's minutes show that just before recessing for the day, "Upon inquiry of the Court, counsel noted that they have agreed on the value of the assets. The Court asked that it be put in writing, and wants to see somewhere along the line what the assets are that are supposed

to be divided." At the outset of the hearing counsel had represented to the court that while the property to be divided consisted of five items that the only item that needed to be evaluated was the Buzzburger business as the other items were at fixed figures.

No such evaluation of the Buzzburger business was presented to the court but on December 1, 1964, an order was entered approving a property settlement agreement between the parties and providing that the same be "incorporated into the Decree of Divorce heretofore filed herein on April 20, 1964, and shall modify and supplement said Decree wherever indicated; and in accordance therewith the Libellee, Cross-Libellant, is ordered to make the payments set forth therein in accordance with the terms thereof."

The property settlement agreement was dated November 25, 1964. It was filed June 15, 1965 *nunc pro tunc* December 1, 1964. Among other provisions the property settlement continued the $100.00 a month child support and required the husband to pay the wife $2,500.00 concurrently with the execution of the document. By the agreement the wife assigned and transferred to the husband her interest in certain specified jointly held shares of stock together with the Buzzburger business and property.

As pertinent to the principal issue presented here, the settlement agreement contained the following paragraphs:

"9. Former husband does and hereby assumes all liabilities and obligations whether heretofore or hereafter incurred in connection with the aforementioned business property, including (but not by way of limitation) any debts of the parties secured by any of said property, and any taxes, state or federal, *incurred during the calendar years 1963 and 1964 only,* including personal income taxes attributable to the income

therefrom, to the extent reflected by the financial statements prepared by Euton S. Y. Wong without audit in connection with these proceedings.

"10. Former husband shall indemnify former wife and save her harmless from any and all claims and demands of every kind arising out of or in connection with said business, including (but not by way of limitation) any claims by former husband against former wife for an accounting of any monies which may have been retained by, paid or advanced to her out of the income from said business. Former wife agrees at any time to execute, acknowledge and deliver to former husband any instruments that former husband may reasonably require for the purpose of giving full force and effect to the provisions of this paragraph upon satisfactory showing that former wife is thereby relieved from any and all liability to third parties in connection with the particular property for which such instrument is executed.

"12. Except as otherwise herein provided, former husband agrees to indemnify and hold and save wife harmless from any liability for the payment of any obligations heretofore incurred by former husband either individually or jointly with former wife.

"13. Former husband has obtained extensions of time within which to file personal income tax returns for former husband and former wife for the year 1963 pending the preparation of financial statements pertaining to the said business. With respect to said returns former husband agrees to assume the responsibility that they are prepared and filed within the time allowed and to assume the full costs of the preparation thereof including any charges for services rendered by James W. Y. Wong, Euton S. Y. Wong, and/or Charles Leong, and to assume the payment in

full of all the taxes due thereon, *and to indemnify former wife and save her harmless from any and all of said taxes for the year 1963,* to the extent reflected by the financial statements prepared by Euton S. Y. Wong without audit in connection with these proceedings. Former wife agrees to cooperate fully with any representatives of former husband in the reconstruction of any and all records necessary for the purpose of preparing said tax returns and to join with former husband in the filing of joint tax returns for said year. For the purpose of securing the payment of said 1963 taxes former husband agrees that the aforementioned 100 shares of Pacific Guardian Life stock shall remain in the joint names of the parties until said taxes are fully paid.

"21. This agreement constitutes the entire understanding of the parties. There are no representations or warranties other than those expressly herein set forth. It shall not be modified or annulled by the parties except by written instrument executed in the same manner as this instrument. * * *" (Emphasis added.)

Following a motion by the wife, citing the husband to show cause why he should not be held in contempt for failure to comply with the provisions of the settlement agreement in respect to the payment of the $2,500.00 and other obligations, a stipulation was filed on January 12, 1965, providing that such matters "together with the question of liability as between the parties, if any, for tax deficiencies for years prior to 1963, is hereby submitted to the Court for determination from the files and records herein together with the correspondence, memos and drafts exchanged between the attorneys, copies of which are attached hereto as Exhibits A through *L.*"

Exhibits A through L attached to the stipulation in-

cluded copies of the property settlement agreement as originally drafted and as subsequently modified by counter proposals of each party together with copies of correspondence between the attorneys of the parties concerning changes in the agreement proposed from time to time on each side. In the record are two additional exhibits, Exhibits M and N, which were submitted ex parte by the wife but were considered by the court. Appellee acquiesces in these exhibits being considered with the rest. Exhibit M is a copy of a letter from the wife's attorney to the husband's attorney dated January 13, 1965, advancing his contention that the deficiency for the 1962 taxes should be paid by the husband. Exhibit N is a report by Mr. Euton S. Y. Wong to the attorneys under date of January 15, 1965 informing them that his estimate of net income tax liability as being between $4,000.00 and $5,000.00, made while testifying, was for the over-all net income liability for the years 1962 and 1963 and that it would be necessary to amend the 1962 state and federal joint net income tax returns "because of the differences in income reported and other changes in the 1962 Internal Revenue Code."

Both the husband and wife had participated in running the business. The wife prepared the joint 1962 tax returns.

The contest over the responsibility for the 1962 deficiency in taxes appears to have arisen out of the fact that the attorneys had assumed from Mr. Wong's testimony that his estimate that there would be required $4,000.00 to $5,000.00 to pay federal and state taxes pertained to the year 1963, whereas, in fact, as above noted, his estimate in that amount also included the additional taxes he computed would have to be returned for the year 1962 on the Buzzburger business. Eventually he prepared returns for 1963 and amended returns for 1962 covering the Buzz-

burger business, which required the payment of state and federal taxes in the amount of $2,310.89 for 1963 and $2,280.39 for 1962.

On January 13, 1965, after hearing argument the court orally announced its decision holding that under its interpretation of the property agreement liability for the 1962 tax deficiency was on the wife, stating in part: "Cross-Libellant is liable for the balance of the support as claimed by Mr. Crumpacker, and that Libellant, Cross-Libellee is liable for the 1962 income taxes. The reason I reached that conclusion is because I notice that there was a provision in the agreement that no question was raised as to how much money she had withdrawn and it was agreed she would keep all that money, and a specific provision regarding taxes. So it seemed to me that was the clear intent of the agreement." An order in conformity therewith was filed on January 28, 1965.

On February 1, 1965 the husband filed a motion for the wife to show cause why he could not pay the amount due on the 1962 taxes out of the $2,500.00 still owing to the wife and which under the settlement agreement should have been paid to her concurrently with the agreement's execution.

On February 24, 1965 the wife filed a motion to vacate the order entered on January 28, 1965 and to dismiss the husband's motion for a show cause. These motions came on for hearing on March 3. The court denied the wife's motion to vacate the order respecting the 1962 taxes and directed opposing counsel to prepare an appropriate order. A decision and order prepared by the husband's attorney was signed by the court and filed on March 17, 1965. In it the court stated, *inter alia*:

"The evidence examined by this Court disclosed and this Court finds that no mistake of fact or fraud exists with respect to the responsibility for payment

of said 1962 taxes, that the Property Settlement Agreement referred to above was correctly drawn (by counsel for Former Wife) and expresses the actual and true intent of the parties as heretofore found by this Court and places responsibility for the payment of all 1962 Federal and State net income taxes upon Former Wife. This Court announced its determination in open Court on January 13, 1965 and in its Order filed herein on January 28, 1965, after a careful consideration of the aforesaid evidence and after full argument by counsel, and the Court believed that this dispute was resolved.

"Apparently, counsel for Former Wife is unhappy with this Court's determination. Based upon this Court's consideration of this matter, it is manifest that further proceedings instituted by Former Wife, after this Court's announcement of its determination, are frivolous, vexatious and harrassing, are without merit and are designed merely to interfere with Former Husband's right to the enjoyment and use of his property."

The order directed the husband to pay the 1962 taxes ($2,280.39) directly out of the $2,500.00 he was required to pay the wife under the settlement agreement and to pay her the balance of $219.61 in full satisfaction of his obligation in that respect. It was also ordered:

"That Former Wife and/or her attorneys, CRUMPACKER & STERRY, shall pay to counsel for Former Husband, GREENSTEIN & COWAN, the sum of $250.00 as and for attorneys' fees and costs incurred in connection with proceedings herein after January 13, 1965."

Judgment for attorneys' fees pursuant to the decision and order of March 17, 1965 was entered the next day.

The wife's appeal attacks the court's action in im-

posing liability for the 1962 taxes on her and in requiring the payment of the $250.00 attorneys' fees to the husband's attorneys.

On oral argument before this court counsel for the appellant conceded that under the terms of the settlement agreement, when considered without resort to any of the extrinsic matters submitted with the stipulation of January 12, 1965, the responsibility for the 1962 taxes would be the joint responsibility of the parties. This was consistent with the statement contained in his letter to opposing counsel of January 12, 1965 (Exhibit L) reading as follows: "As I have stated previously, I believe the final draft of the Agreement as executed and approved by the Court is clear and unequivocal and does *not* place upon Mrs. Lyons[1] any responsibility for unpaid taxes for years prior to 1963. As a matter of fact our original draft and the correspondence in relation thereto would confirm our position that we were attempting to have *Mr.* Kahl assume any liability for unpaid taxes arising out of the Buzzburger business inasmuch as he was to receive the business in the settlement Agreement. The fact that he declined to assume that responsibility in no way could be construed as an assumption of that same liability on the part of Mrs. Lyons. As I stated in Court the business was during that period being operated by both parties and the tax returns were being filed jointly. Therefore, in the absence of any specific provision in the final Agreement, or otherwise, the tax deficiency would seem to be a joint responsibility unrelated to the agreement between the parties."

On argument, appellee's counsel also made the concession that considering the terms of the agreement alone the liability would be on "a half and half basis" if the

---

[1] The cross-libellee remarried after the entry of the divorce decree.

court should not accept his argument that by negative implication the husband was relieved of responsibility for any part of the 1962 taxes by reason of having assumed under the agreement the taxes "incurred during the calendar years 1963 and 1964 only."

In our opinion the implication of the language quoted from Paragraph 9 is that the husband did not assume contractual responsibility under the agreement for the whole of the 1962 taxes but it is *non sequitur* to say that the implication extends so far as to create liability on the part of the wife for the whole of the 1962 taxes.

It is our conclusion that as finally drafted the agreement was silent as to who should be responsible for the 1962 taxes and that consequently that responsibility rested where the law fixed it, that is, jointly and equally between the parties. Further and notwithstanding the possible application of the parol evidence rule, we have thoroughly considered the evidence *aliunde* furnished by the exhibits attached to the parties' stipulation and find nothing in such evidence that calls for a different conclusion.

In the main, it appears in regard to appellant's attempted use of and argument on the various letters, memorandums, drafts and redrafts submitted that what she seeks thereby is a modification of the agreement because of her understanding, or more properly, her misunderstanding, that the accountants' conclusion was that the taxes that would be due in the amount of $4,000.00 to $5,000.00 would cover the over-all tax liability to be assumed by the husband. And, because of this misunderstanding, the argument is that the agreement should be so read as to impose the liability for the 1962 taxes upon the husband. In ultimate effect what appellant is calling for is a modification of the agreement. However reformation of the agreement was not the issue before the lower court and it is not before us. The issue before the lower court

and this court was and is simply an interpretation and enforcement of the agreement itself and as has been stated, it is our view that the agreement cannot be read even with the aid of the extrinsic matters presented to the court to impose full responsibility for the 1962 taxes on the husband.

And conversely, looking at the husband's case, we can find nothing in the extrinsic matters offered which would warrant reading the agreement to impose the full burden of the 1962 taxes on the wife.

While as stated we have considered thoroughly all of the fourteen exhibits in the record, we find no occasion to attempt to discuss them seriatim or at length in connection with considering appellee's attempt to found his case on the extrinsic evidence. It should be sufficient we think to state that appellee's principal contention is based on the fact that at one stage in the drafting process there was a recital inserted in the proposed agreement by which the parties acknowledged "that there may be tax liability arising out of and in connection with the business known as the BUZZBURGER" and a provision that: "With respect to such tax liability Former Husband hereby assumes any and all such tax liability except that which may be reasonably attributed to monies withdrawn from said business by Former Wife and not previously reported for tax purposes, if any. Former Wife hereby assumes any and all such tax liability which may be reasonably attributed to said monies."

The quoted provision relieving the husband from taxes for unreturned monies due to the wife's withdrawals and other provisions of similar import admittedly were deleted as the drafting proceeded to final form in order to avoid calling attention to a situation which might induce the taxing officials to believe that an audit should be made of the parties' 1962 joint returns insofar as they covered

income from the Buzzburger business. As it is put in appellee's brief, "However, because of the possibility of inviting official governmental interest to this unreported income and the facts thereto surrounding, counsel for appellant requested that this language be deleted from the agreement." This of course left the agreement as it reached final form *in vacuo* as far as the tax liability for 1962 was concerned, which, as we have already indicated, left the liability therefor resting as determined by the tax laws.

Further, even if we assume, as urged by appellee, that he was to be relieved of tax liability which could reasonably be "attributed to monies withdrawn from said business by Former Wife and not previously reported for tax purposes," there is no evidence in the record to support the stated condition relieving him of liability. Paragraph 10 of the agreement as finally drawn relieved the wife of any duty of accounting for "any monies which may have been retained by, paid or advanced to her out of the income of said business," from which it appears that it was not intended that the amount of such monies, if any, be determined. And on the record before us we cannot say that the wife was solely at fault as to any under statement of income on the Buzzburger business made in the original returns for 1962.

We hold therefore that the parties to this action are equally responsible for the additional $2,280.39 of taxes for 1962.

We are also of the opinion that the court committed error in awarding the $250.00 attorneys' fees in the order of March 17, 1965.

The manner in which the allowance of attorneys' fees was made was contrary to basic requirements. There was no prayer for fees in the cross-libel. No notice of applica-

tion for allowance of the fees was ever made and the wife was not afforded an opportunity to be heard on the issue.[2] The inclusion of the fee came ex parte and was entered as an afterthought. Elementary due process was lacking. But that need not be the basis of our reversal on the point.

The general rule is "that attorney's fees cannot be awarded as damages or costs where not so provided by statute, stipulation or agreement." *Jones* v. *Dieker,* 39 Haw. 448, 455. The rule is applicable in divorce proceedings. *Yankoff* v. *Yankoff,* 40 Haw. 179, 181. See also *Otani* v. *Otani,* 30 Haw. 61; *Ludin* v. *Ludin,* 28 Haw. 487. As stated in 24 Am.Jur.2d, *Divorce,* § 574, p. 696, "On the same principles which ordinarily deny the power to award alimony to a husband, it is held that the court cannot compel the wife to pay sums to the husband for counsel fees and suit money in the absence of an enabling statute." The only statutory provision covering attorney's fees in divorce proceedings (R.L.H. 1955, § 324-34) provides for allowance thereof to the wife only. Consequently the court had no power to charge the fees against the wife in this case. Further, we find that even the basis upon which the fee was granted, that is, that the proceedings instituted on behalf of the wife after January 13, 1965, were "frivolous, vexatious and harrassing," is insupportable. It is only when a matter is presented without reasonable or probable cause that the party's action may be said to be vexatious. See 44 Words and Phrases 388, *et seq.* While it is true that the wife's attorney may appear to have been overly persistent in attempting to get his point across, and that he was oblivious to the fact that he was wearing down the court's patience, we cannot consider his actions in that respect to have been vexatious. Con-

---

[2] In the decision and order of March 17, 1965, it was further ordered, "That counsel for Former Husband need not submit this Order to counsel for Former Wife for approval as to form."

sequently we reverse the court's ruling and direct the disallowance of the attorneys' fees.

There are three other matters incident to this appeal which may be disposed of summarily.

After the opening and answering briefs had been filed herein the appellee filed a motion to dismiss the appeal on the grounds that "it is frivolous and vexatious, and is not an appeal from an appealable order." The ruling on the motion was reserved to be considered with the merits of the appeal.

The argument for the motion is grounded on the fact that in submitting the issue of the 1962 taxes for determination of the court the stipulation provided that, "It is further stipulated the determination of the court on the foregoing issues shall be final."

Appellee argues that the quoted language is the equivalent of an agreement of the parties that neither would appeal from an adverse decision on the issue. We do not so read the provision. It is our view that the stipulation meant only that no further evidence would be presented on the issue and that the order or judgment to be entered on the court's determination of the issue would be final in the sense that it would be one from which an appeal could be taken. The motion to dismiss should be and is denied.

In connection with the motion to dismiss, appellee made application for attorneys' fees in this court on the grounds "of the frivolous, vexatious and harrassing nature of the appeal," and on March 1, 1967, some eight minutes before this case was set for argument, a motion for allowance of attorney's fees on appeal was filed on behalf of the appellant.

Both of these motions are denied. Our disposition of the allowance of attorneys' fees below is equally applicable to the appellee's application for fees in this court and

appellant's motion is untimely under *Otani* v. *Otani,* *supra,* 30 Haw. 61.

Reversed and remanded with directions to vacate the judgment of March 18, 1965, and to enter an appropriate judgment or order respecting the 1962 taxes consistent with this opinion.

*E. D. Crumpacker,* for libellant, cross-libellee, appellant.

*Stuart M. Cowan* (*Greenstein & Cowan* of counsel), for libellee, cross-libellant, appellee.