CEDRIC C. CHUN, TRUSTEE FOR CREDITORS AND STOCKHOLDERS OF SPORTSWEAR HAWAII, LTD., A DISSOLVED HAWAII CORPORATION *v.* JAMES KWAN KEE PARK, ETHEL OI KING TON PARK, HOLIDAY FASHIONS, INC., A HAWAII CORPORATION, AND HONOLULU SAVINGS & LOAN CO., LIMITED, A HAWAII CORPORATION, LEONARD P. PARESA AND GEORGE M. KOGA *v.* UNITED TITLE COMPANY, LIMITED, A HAWAII CORPORATION.

No. 4768.

DECEMBER 11, 1969.

RICHARDSON, C.J., ABE, KOBAYASHI, JJ., CIRCUIT JUDGE HAWKINS IN PLACE OF MARUMOTO, J., DISQUALIFIED, AND CIRCUIT JUDGE NELSON DOI IN PLACE OF LEVINSON, J., DISQUALIFIED.

OPINION OF THE COURT BY ABE, J.

This case involves a Pele Street property in Honolulu which was conveyed by James and Ethel Park to George M. Koga and Leonard Paresa.

In connection with this transaction, the Parks retained the United Title Company to prepare a certificate of title search. The title company prepared and delivered the certificate to the Honolulu Savings and Loan Association on April 10, 1962. The certificate noted a recorded first mortgage to State Savings and Loan Association but failed to note a recorded second mortgage executed by the Parks to Sportswear Hawaii, Ltd. On the basis of the certificate, the transaction was consummated.

Subsequently in October 1962, Koga and Paresa entered into an agreement to sell the premises to the Au Hoys. The United Title Company making a title search, at this time, discovered the aforementioned second mortgage to Sportswear Hawaii, Ltd., and the Au Hoys rescinded the agreement pursuant to a provision contained therein.

Subsequent thereto, Cedric Chun, trustee for the creditors and stockholders of Sportswear Hawaii, Ltd., a dissolved corporation, instituted a suit to foreclose the second mortgage, naming Koga and Paresa, and others, as defendants.

A third party complaint was filed by Koga and Paresa,

hereinafter called "plaintiffs," against the United Title Company, Ltd., hereinafter called "defendant."

This action was tried separately by the first circuit court without jury and the plaintiffs were awarded judgment of $51,246.25 and defendant appealed.

## I.

The defendant title company contends that the trial court erred in finding that it was liable in tort to plaintiffs for its failure to report a recorded second mortgage in the "Certificate of Title" because there was no privity of contract between the plaintiffs and defendant.

It is true that the order for the certificate was placed by a real estate broker representing the sellers; however, the order also informed the defendant that the plaintiffs were the buyers and that the Honolulu Savings and Loan Association was the lending institution.

The trial court found that the certificate of title search would be relied upon not only by the sellers, but also by the purchasers (plaintiffs) and the Honolulu Savings and Loan Association; and that in reliance of the certificate, the Honolulu Savings and Loan Association did make the loan to plaintiffs and plaintiffs did purchase the premises, accepting a warranty deed.

Thus, under the record of this case, we find no difficulty in imposing a duty and we hold that defendant title company owed plaintiffs a duty to use reasonable care in making the search and in the preparation of the certificate of title search for the premises.

We believe that it would be contrary to the rule of fair play to hold that the defendant company did not owe the Honolulu Savings and Loan Association and the plaintiffs a duty to use reasonable or ordinary care in the preparation of the certificate of title search because the

very purpose of the document was to show to both of them, as well as the seller, that the seller had good marketable title, free and clear of all encumbrances.[1]

Courts of other jurisdictions have also imposed such a duty in *Mulroy* v. *Wright,* 185 Minn. 84, 240 N.W. 116 (1931); *Denton* v. *Nashville Title Co.,* 112 Tenn. 320, 79 S.W. 799 (1904). See also, *Restatement of Torts* § 552 (1938); Prosser, *Law of Torts,* § 102 (3d ed. 1964).

## II.

Let us next consider the question whether the trial court erred in awarding the plaintiffs loss of anticipated profits for the sum of $27,240 as damages in addition to the "out of pocket expenses," totalling $22,461.25.[2]

The trial court in its conclusions of law found that the defendant was liable to the plaintiffs for the anticipated loss of profits "in the sum of $27,240, that said loss of profits which are not speculative, uncertain and contingent, were the direct and necessary result of the defendant's negligence and were proximately caused by the defendant's negligence."

The plaintiffs contend that the defendant is liable for the anticipated loss of profit as a proximate result of defendant's negligence. The general rule is that a tortfeasor is not liable for all the consequences of his tortious activity simply because those consequences may be traced to his activity. On the other hand, in strict logic it would appear that one should be held responsible for all the losses, whether proximate, or remote, that flow from his

---

[1] The contract provided for the sale and purchase of the premises "free and clear of encumbrances" and it also provided "that the evidence of title is to be in the form of Certificate of Title issued by a licensed searcher of titles."

[2] "Out of pocket expenses" consisting of: $15.500 cash down payment, $4,397 payments on mortgage, $1,011.30 financing charges, $404.98 real property and gross income taxes, $100.97 other expenses, $102 insurance, and $945 plans and specifications and permit for new building.

wrongful act. However, the courts have accepted the doctrine of proximate cause to limit liability and damages in tort cases. *Belisle* v. *Wilson,* 313 S.W.2d 11 (Mo. 1958); *Taylor Imported Motors, Inc.* v. *Smiley,* 143 So. 2d 66 (Fla. 1962); *Gowens* v. *Morgan & Sons Poultry Co.,* 238 F. Supp. 399 (M.D. N.C. 1965); *United States* v. *Sutro,* 235 F.2d 499 (9th Cir. 1956).

It is conceded that the definition of "proximate cause" is easily given in general terms, but courts have recognized the difficulty in the practical application of this term to the facts of particular cases. *Anderson* v. *Miller,* 96 Tenn. 35, 33 S.W. 615 (1896). It has been said: "What is the proximate cause of an injury in a legal sense is often an embarrassing question, involved in metaphysical distinctions and subtleties difficult of satisfactory application in the varied and practical affairs of life." *Pullman Palace Car Co.* v. *Barker,* 4 Colo. 344, 345; 34 Am. Rep. 89 (1878). We believe no exact rule has been formulated to determine when causes are proximate and when remote; in fact it might be impossible by any general rule to draw a line between causes of injuries which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action.

In *Insurance Co.* v. *Tweed,* 74 U.S. (7 Wall.) 44, 52 (1868), the United States Supreme Court in its discussion of the doctrine of proximate cause concluded: "It would be an unprofitable labor to enter into an examination of these cases. If we could deduce from them the best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations."

In *Pease* v. *Sinclair Refining Co.,* 104 F.2d 183, 185 (2d Cir. 1939), the court said:

". . . no definite principle of 'proximate' and 'remote,'

meaning, recoverable and non-recoverable, damages, can be laid down, but that the question 'is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent,' and 'the best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other.' "

It is interesting to note that both plaintiffs and defendant rely on *Restatement of Torts* § 552, entitled "Negligent Misrepresentation"; the plaintiffs[3] for the purpose of imposing tort liability under the record of this case and the defendants[4] to limit damages.

---

[3] Plaintiffs cite Restatement of Torts (1938 ed.) Topic 3, Negligent Misrepresentation, § 552:

§ 552. INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS.

One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

  (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

  (b) the harm is suffered

    (i) by the person or one of the class of persons for whose guidance the information was supplied, and

    (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.

[4] Defendant cites Restatement (Second) of Torts (Tentative Draft No. 12, 1966) Topic 3, Negligent Misrepresentation, § 552:

§ 552. INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS.

(1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered

We believe § 552 of Restatement (Second) of Torts (Tentative Draft No. 12, 1966) is a fair and just restatement of the law on the issue of negligent misrepresentation. In our opinion, under the rule advocated, defendant in this case is liable to the plaintiffs as stated in Part I of this decision, but only for the damages limited to the transaction for which the certificate of title of search was intended to influence[5]—that is, only for damages plaintiff suffered in the transaction wherein they purchased the property from the Parks.

Thus, under the record of this case, we hold that the defendant's negligence was not the proximate cause of the loss of anticipated profits.

(a) By the person or one of the persons for whose benefit and guidance he intends to supply the information, or knows that the recipient intends to supply it; and

(b) Through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends, or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

[5] On this point, Restatement (Second) of Torts (Tentative Draft No. 12, 1966) gives the following illustrations:

8. A, a title insurance company, negligently prepares an abstract of the title to B's land, which shows that B has good title, although his title is in fact defective. A knows that B intends to exhibit the abstract to C Bank, as a basis for applying for a loan secured by a mortgage on the land. In reliance upon the abstract, C Bank buys the land from B for use as a parking lot, and as a result suffers pecuniary loss. A is not liable to C Bank.

9. A, a certified public accountant, negligently certifies a balance sheet for B Corporation, which shows it to be in a favorable financial condition, although it is in fact insolvent. A knows that B Corporation intends to exhibit the balance sheet to C Corporation, as a basis for applying for credit for the purchase of goods. In reliance upon the balance sheet, C Corporation buys the controlling interest in the stock of B Corporation, and as a result suffers pecuniary loss. A is not liable to C Corporation.

10. The same facts as in Illustration 9, except that A expects that C Corporation will be asked to extend credit for the purchase of washing machines, and credit is extended instead for the purchase of electric refrigerators. A is subject to liability to C Corporation.

## III.

Then, it would necessarily follow that the sum of $945.00 expended for "plans and specifications and permit for new building" was erroneously awarded as damages to plaintiffs because the sum was not expended as part of the plaintiffs' transaction of acquiring the property.

## IV.

We have said the general rule is that attorney's fees are not to be awarded as damages or costs unless so provided by statute, stipulation or agreement. *Jones* v. *Dieker*, 39 Haw. 448 (1952); *Kahl* v. *Kahl*, 49 Haw. 688, 427 P.2d 86 (1967); *Mid-Pacific Dress Mfg. Co.* v. *Cadinha*, 33 Haw. 456 (1935); *Young Chun* v. *Robinson*, 21 Haw. 368 (1912). In a tort action plaintiffs should not be awarded attorney's fee either as damages or cost. We hold that the trial court erred in awarding the plaintiffs the sum of $2,650 as damages for attorney's fee.

## V.

The other points of appeal are without merit. Affirmed in part and reversed in part. The case is remanded with directions to vacate the judgment and enter a judgment consistent with this opinion.

*Albert Gould* (*Cobb & Gould* of counsel) for third-party defendant-appellant.

*Leland H. Spencer* (*Walter G. Chuck* and *Charles M. Tonaki* with him on the brief, *Chuck & Fujiyama* of counsel) for defendants and third-party plaintiffs-appellees.